

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-26-2008

# Zheng v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 07-3122

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Zheng v. Atty Gen USA" (2008). *2008 Decisions.* Paper 174.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/174

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-3122

JIAN ZHAU ZHENG,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

On Petition for Review of a Decision and Order of the
Board of Immigration Appeals
(BIA No. A70-838-800)

Immigration Judge:  William Strasser

No. 07-3199

ZHI YONG CHEN,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

On Petition for Review of a Decision and Order of the
Board of Immigration Appeals
(BIA No. A77-340-635)

Immigration Judge:  Donald Ferlise

Argued October 27, 2008

BEFORE:  SLOVITER and GREENBERG, Circuit Judges,
and IRENAS, District Judge*

(Filed: November 26, 2008)

Gary J. Yerman (argued)

*Hon. Joseph Irenas, Senior Judge of the United States District

Court for the District of New Jersey, sitting by designation.
Yerman & Associates
401 Broadway
Suite 1210
New York, NY 10013-0000

 Attorneys for Petitioner in No. 07-3122

Jeffrey S. Bucholtz
Acting Assistant Attorney General
Civil Division
Michael P. Lindermann
Richard M. Evans
Ethan B. Kanter (argued)
Senior Litigation Counsel
Ben Franklin Station
Washington, DC 20044-0000

Michael P. Lindemann
Assistant Director
P.O. Box 878

Ben Franklin Station
Washington, DC 20044-0000

 Attorneys for Respondent in No. 07-3122

Gary J. Yerman (argued)
Yerman & Associates
401 Broadway
Suite 1210

New York, NY 10013-0000

   Attorneys for Petitioner in No. 07-3199

Jeffrey S. Bucholtz
Acting Assistant Attorney General
Civil Division
Carol Federight
Senior Litigation Counsel
Office of Immigration Litigation
M. Jocelyn Lopez-Wright
United States Department of Justice
Office of Immigration Litigation
Suite 700S
1331 Pennsylvania Avenue, N.W.
Washington, DC 20530-0000

Eric W. Marstellar (argued)
Paul F. Stone
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044-0000

   Attorneys for Respondent in No. 07-3199

———————

OPINION OF THE COURT

———————

GREENBERG, <u>Circuit</u> <u>Judge</u>.

## I. INTRODUCTION

These two matters come on before this Court on separate petitions for review of decisions and orders of the Board of Immigration Appeals ("BIA") brought by Jian Zhau Zheng and Zhi Yong Chen. Both petitioners are citizens of the People's Republic of China from Fujian Province who currently reside in the United States, and each is married with more than one child born in this country. In both cases the BIA rejected the petitioner's appeal from an immigration judge's denial of his application for asylum, following which each petitioner filed an unsuccessful motion with the BIA to reopen his removal proceedings.[1] These petitions for review of the denial of the motions for reopening followed. Significantly, each petitioner based his motion on allegations that there had been changed circumstances in China from those extant at the time of the denial of his application for asylum.

Inasmuch as the two cases concern similar questions of law and of fact and reach this Court following almost parallel procedural paths, we will address both petitioners' petitions in this consolidated opinion. For the reasons that we will discuss, we will vacate the BIA's denial of the petitioners' respective motions to reopen and remand the matters to the BIA for further proceedings. In doing so, however, we make clear that we do

---

[1]Zheng filed an earlier motion to reopen that we discuss below.

5

not suggest that we disagree with the results the BIA reached on the records before it as we predicate our holding solely on procedural deficiencies that we find existed in the BIA proceedings.

## II. BACKGROUND

A. Zheng

Zheng arrived in the United States on August 27, 1993. He married in New York on January 23, 1998, and he and his wife have three children, the first born on January 29, 1998, the second born on January 4, 1999, and the third born on June 21, 2000. On August 27, 1993, Zheng, who was represented by an attorney other than his attorney on this appeal, sought asylum. An immigration judge conducted a hearing on his application on March 10, 1997, but, based on Zheng's failure to appear at the hearing, denied his request for asylum and ordered his exclusion in absentia. Zheng asserts that he did not appear because his attorney did not inform him of the hearing date.[2] Moreover, he claims that he did not learn of the denial of his request for

---

[2]Respondent contends that Zheng failed to appear at the hearing "despite efforts to contact [him] and notify him of the obligation to attend." Br. at 4. We make no determination on the question of why Zheng did not appear for the hearing, but will assume without deciding that he did not appear because his attorney did not advise him of the need to do so.

6

asylum until September 1997, when an application for renewal of his employment authorization was denied. Zheng appealed from the denial of asylum, but on December 18, 1997, the BIA denied the appeal as untimely.

On June 27, 2002, Zheng filed a motion with the BIA to reopen his case on the basis of his changed personal circumstances, namely, the birth of his three children in the United States. He claimed that "[u]nder the current recognized climate of coercive population control" in China if he returned to China he would be persecuted for having more than one child. App. at 177. He did not claim, however, that there had been a material change in circumstances in China with respect to population control between the time that he filed his asylum application and the time of his motion to reopen. On October 9, 2002, the BIA denied his motion to reopen and inasmuch as Zheng did not file a petition for review of that denial, no court of appeals has reviewed that denial and we, of course, do not review it now.

On August 18, 2006, Zheng filed a second motion to reopen his case, contending that he should be granted asylum because of changed circumstances in China by reason of its enhanced enforcement of its population control policies as compared to those at the time that the immigration judge and BIA denied his asylum application. Moreover, he argued that his counsel had been ineffective during his original asylum proceedings that an immigration judge had dismissed because of his failure to appear for his hearing. Zheng submitted several documents in support of his motion as evidence of those changed circumstances and filed a personal affidavit which

7

stated:

> In my recent phone contacts with my family and friends in China, I was told that in the past year, the government had increased the use of labor camp, forced abortions and sterilizations. I was also told that a couple is only allowed to have one child. Those who resist and violate the new law would not only be forced to undergo abortion operations or sterilization procedures, but also face criminal prosecution pursuant to the Population and Family Planning Law. What I heard is consistent with the 2005 County [sic] Report on China by the [State Department].

Id. at 55. Zheng further stated in his affidavit:

> Such persecutions have done irreparable damage[] to many families of young couples. My neighbor Zhou Zheng is an example. [He] and his wife Lin, Hui ha[d] their first daughter several years ago, . . . and [] secretly gave birth to their second daughter. Unfortunately, the government family planning officials found out and forced Zhou Zheng to undergo sterilization immediately on 04/10/2006. My neighbor Zheng, Qun is another victim. After his wife gave birth to [a boy and a girl] . . . , on Feb[.] 28, 2006, Zheng, Qun was forcibly sterilized by the family planning officials.

Id. at 55-56. Zheng also stated:

8

> I requested my parents to inquire with the villager's committee in my hometown. My parents told me that the village officials were already aware that I had two children in the United States. An official letter issued by the villager committee in response to my inquiry stated that I was still considered [] a citizen of China and had to undergo necessary family planning procedures with[in] one week once I return[] to China . . . .

Id. at 56. Zheng also submitted what purports to be a letter from Changle City Shouzhan Town People's Government Family Planning Office ("Changle City letter") dated June 9, 2006, which states: "[a]lthough you are currently residing in the United States, you are still a citizen of the People's Republic of China who had three children, and therefore you will definitely be targeted to [sic] sterilization." Id. at 72.

In addition to his affidavit and the Changle City letter, Zheng submitted several documents describing what he claims are changed circumstances in China. These documents include: (1) two reports by the State Department entitled "China – Country Reports on Human Rights Practices" ("Country Report") for 2004 and 2005 (issued in 2005 and 2006 respectively); (2) a State Department document entitled "Consular Information Sheet – China" ("Consular Information Sheet") dated May 29, 2003; (3) a report entitled "Congressional-Executive Commission on China – Annual Report" ("Commission Report") for 2005; (4) testimony by John Aird to Congress concerning China's family planning law from

9

September 23, 2002; (5) testimony by Harry Wu to Congress on December 14, 2004; (6) a document entitled "Population and Family Planning Regulation of Fujian Province" ("Fujian Regulation") dated July 26, 2002; and (7) two newspaper articles from 2005. Inasmuch as these documents did not exist when he filed his original petition to reopen, he could not present any of them with that motion.

On June 21, 2007, the BIA denied Zheng's second motion to reopen his case, and on July 16, 2007, Zheng filed the petition now before us to review the BIA's June 21, 2007 decision and order.

B. Chen

Chen arrived in the United States on January 31, 2001, and was married in Pennsylvania on May 18, 2001. Chen and his wife have two children, the first born on June 24, 2002, and the second born on November 22, 2003. Chen sought asylum but on June 10, 2003, an immigration judge denied his application for asylum and ordered his removal. Chen appealed, but on July 19, 2004, the BIA affirmed the denial.

On March 9, 2007, Chen filed a motion to reopen his case based on changed circumstances in China. Chen submitted several documents in support of his motion to reopen, including a personal affidavit in which he stated:

> [T]he birth of our children has made my return home more risky and dangerous. In my recent phone contacts with my famil[y] and friends in

China, I was told that in the past year, the government has increased the use of forced abortions and sterilization. Those who resist and violate the new law would not only be forced to undergo abortion operations or sterilization procedures, but also face criminal prosecution pursuant to the Population and Family Planning Law (PFPL).

Id. at 35. He also stated in his affidavit:

My mother related to me several such tragic incidents [that] happened in my hometown. Mr. Gang Zheng and his wife Ms. Hua Qin have two daughters. They wanted a son very much. Unfortunately, on March 3, 2006, the wife Ms. Hua Qin was forced into a sterilization to prevent them from having more children in the future. The same tragedy also happened to Mr. Jianping Lin and his wife. They also have two daughters and wanted a son. However, Mr. Lin's wife was forcibly sterilized in April 2006.

Id. at 36. The affidavit continued:

My parents told me that the village officials were already aware that I had two children in the United States. They also told me that since I do not have legal status in the United States, I was still considered [] a citizen of China[,] not an overseas Chinese[;] therefore once I return[] to

11

China, I ha[ve] to undergo necessary family planning procedures, such as abortions and sterilizations, unless I become an U.S. citizen, permanent resident or obtain[] Master or Doctorate degrees in the United States.

Id.

In addition to his affidavit, Chen submitted a letter from his mother, in which she stated:

Recently the Chinese government has strengthened the enforcement of the Population and Family Planning Law (PFPL). During the past year, there were a lot of enforced abortions and sterilizations in our hometown. The situation is much worse than before. For example, a resident in our village named Gamg Zheng has two daughters. He wanted to have a son. However, his wife, Hua Qin, was forced to undergo an involuntary sterilization on March 3, 2006. Secondly, there is a couple in our village, Mr. and Mrs. Jianping Chen. They have two daughters and also wanted a son. Unfortunately, Mr. Chen was sterilized in April, 2006. Based on the above incidents, if my son were sent back to Mainland China, he would also be involuntarily sterilized and would not have more children in the future because he has already had two sons.

Id. at 65-66.

In addition to the affidavit and letter, Chen submitted other documents to demonstrate changed circumstances in China since the time of his original application for asylum. Several documents are the same as ones that Zheng submitted in support of his motion, including: (1) the State Department's 2004 and 2005 Country Reports; (2) the Consular Information Sheet dated May 29, 2003; (3) the Congressional Executive Commission Report for 2005; (4) Aird's September 23, 2002 testimony to Congress; (5) Wu's December 14, 2004 testimony to Congress; and (6) the same two newspaper articles from 2005. But Chen also included documents not included with Zheng's motion: (1) a document by the Administrative Office of the National Population and Family Planning Committee, dated March 14, 2006; (2) a document that Chen describes as the "Changle City Family Planning Q & A Handbook"; and (3) the Congressional Executive Commission Report for 2006.

On June 29, 2007, the BIA denied Chen's motion to reopen his case and on July 23, 2007, Chen filed the petition now before us to review the BIA's decision and order.

## III. JURISDICTION AND STANDARD OF REVIEW

Zheng and Chen correctly assert that the BIA had jurisdiction under 8 C.F.R. § 1003.2(c). We have jurisdiction over the present petitions for review pursuant to 8 U.S.C. §

13

1252.[3]  We review the denial of a motion to reopen for abuse of

_____

   [3]We have not overlooked respondent's contention that the proceedings on Zheng's original motion to reopen deprive us of jurisdiction to entertain his petition for review of the denial of his second motion to reopen.  In considering the respondent's jurisdictional contention we recognize that in the light of 8 C.F.R. § 1003.2(c)(1) and (2), which we discuss below, if a petitioner did not file a petition for review from a denial of a motion to reopen, it reasonably could be argued that the BIA would be justified on a second motion to reopen in precluding him from advancing evidence that was available or could have been discovered for use at the prior proceedings but was not presented.  But even if that is true, we see no basis to hold that if a petitioner brings a second motion to reopen his failure to present evidence on a prior motion should deprive a court of appeals of the jurisdiction that it otherwise would have to entertain a petition for review from a denial of the second motion.  In this regard we point out that respondent does not direct our attention to any statute or regulation that explicitly deprives us of jurisdiction that we otherwise would have in this situation, and we are aware of none, though we recognize that Congress intended that ordinarily an alien could bring only one motion to reopen.

   In fact the respondent indicates in his brief that "[w]ith limited exceptions, one of which is here at issue, an alien may file only one motion to reopen and must file that motion within ninety days of the date on which the final administrative decision was rendered," citing 8 C.F.R. § 1003.2(c)(2).  Br. at

14

discretion. Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004). We will not disturb the BIA's decisions "unless they are found to be arbitrary, irrational, or contrary to law." Id. (internal citations and quotation marks omitted).

---

14 (emphasis added). Moreover, 8 C.F.R. § 1003.2(c)(3) provides that the time and numerical limitations otherwise applicable do not "apply to a motion to reopen proceedings [t]o apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing."

This regulation with respect to newly available evidence describes the situation here inasmuch as none of the eight documents that Zheng submitted that we listed above existed on June 27, 2002, when he filed his first motion to reopen. Furthermore, while certain of these documents did exist on October 9, 2002, when the BIA denied Zheng's first motion to reopen, it is not clear to us that even those documents could have been presented on the earlier motion to reopen. We also point out that the BIA's October 9, 2002 decision and order did not cite any of the eight documents, an understandable omission inasmuch as all eight relate to conditions in China whereas the BIA regarded Zheng's motion as being "based on a change in his personal circumstances, the birth of three children after the Board's adverse decision was rendered." App. at 169.

15

## IV. DISCUSSION

The general criteria governing motions to reopen set forth in 8 C.F.R. § 1003.2(c)(1) provide that:

> A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material. A motion to reopen proceedings for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation. A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing . . . .

Although a motion to reopen "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened," 8 C.F.R. § 1003.2(c)(2), the 90-day limitation does not apply if the movant seeks reopening "based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii).

16

The Supreme Court has set forth three bases on which the BIA can deny a motion to reopen:

> First, it may hold that the movant has failed to establish a prima facie case for the relief sought . . . . Second, it may hold that the movant has failed to introduce previously unavailable, material evidence that justifies reopening, as required by regulation. Third, in 'cases in which the ultimate grant of relief [being sought] is discretionary (asylum, suspension of deportation, and adjustment of status, but not withholding of deportation),' the Board can 'leap ahead . . . over the two threshold concerns (prima facie case and new evidence/reasonable explanation) and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief.'

Sevoian v. Ashcroft, 290 F.3d 166, 169-70 (3d Cir. 2002) (quoting INS v. Abudu, 485 U.S. 94, 105, 108 S.Ct. 904, 912 (1988)) (internal citations omitted). But regardless of which of these multiple bases for denying a motion to reopen that the BIA is examining, when considering a motion to reopen the BIA "must actually consider the evidence and argument that a party presents." Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001) (internal quotation marks omitted). If the BIA rejects the motion to reopen, on an ensuing petition for review a court will uphold that determination if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct.

17

812, 815 (1992) (internal quotation marks omitted).

To qualify for asylum or withholding of removal, an applicant must establish that he has a well-founded fear that he will be persecuted if removed to his home country on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §§ 1101(a)(42), 1158(b), 1231(b)(3). "[A] person who has a well founded fear that he or she will be forced to [abort a pregnancy or undergo involuntary sterilization] or [is] subject to persecution for [failure, refusal, or resistance to undergo such a procedure] shall be deemed to have a well founded fear of persecution on account of political opinion." 8 U.S.C. § 1101(a)(42)(B).

An applicant bears the burden of proving eligibility for asylum based on specific facts and credible testimony. 8 C.F.R. § 208.13(a); Abdille v. Ashcroft, 242 F.3d 477, 482 (3d Cir. 2001). To demonstrate that he has a well-founded fear of persecution, an applicant must satisfy three requirements: (1) he or she has a fear of persecution in his or her native country; (2) there is a reasonable likelihood that he or she will be persecuted upon return to that country; and (3) the applicant is unable or unwilling to return to that country as a result of his or her fear. 8 C.F.R. § 208.13(b)(2)(i). The eligibility threshold for obtaining withholding of removal is higher than that for obtaining asylum as the Attorney General must determine that repatriation would threaten the alien's life or freedom on account of one of the protected grounds to withhold removal. 8 U.S.C. § 1231(b)(3). An applicant for withholding of removal therefore must demonstrate a "clear probability" of persecution if he is removed. Senathirajah v. INS, 157 F.3d 210, 215 (3d

18

Cir. 1998) (internal quotation marks omitted).

A. Zheng

1. Changed circumstances

Zheng filed his original motion to reopen on June 27, 2002, but the BIA denied that motion as untimely on October 9, 2002, and, as we indicated above, we do not review that denial. Zheng filed his second motion to reopen, the denial of which has led to these proceedings, on August 18, 2006. Although Zheng argued in his second motion to reopen that there had been changed circumstances in China from the time that he sought asylum that warranted exception from the 90-day limitation pursuant to 8 C.F.R. § 1003.2(c)(3)(ii), the BIA concluded that "the pending motion does not fall within [that] time limit exception." App. at 3. In these proceedings Zheng primarily argues that the BIA abused its discretion in reaching that conclusion, and we therefore begin our analysis of his case by reviewing that aspect of its decision.

In that decision, the BIA stated that "[w]e again find, after considering the arguments and evidence submitted by the applicant, that the birth of the appellant's three children in the United States and his marriage do not constitute a change in circumstances arising in the country of nationality which would create an exception to the time and numerical limitations for filing a motion to reopen." Id. at 3. In its decision the BIA discussed Matter of J-W-S-, 24 I & N Dec. 185 (BIA 2007), review denied, Shao v. Mukasey, No. 07-2689, __ F.3d __, 2008 WL 4531571 (2d Cir. Oct. 10, 2008). In particular, the BIA

19

focused on J-W-S-'s review of three documents submitted as evidence in that case: (1) affidavits by Aird;[4] (2) the State Department's Country Report for 2006; and (3) a report by the State Department entitled "China:  Profile of Asylum Claims and Country Conditions," dated May 2007.  Id.  The BIA quoted J-W-S-'s discussion of those reports, and observed that in J-W-S- the BIA "concluded, based on the 2007 Profile, that children born overseas are not counted for birth planning purposes when the parents return to China."  Id.  The BIA further quoted J-W-S- in stating that "if a returnee who has had a second child while outside of China is penalized at all upon return, the sanctions would be fines or other economic penalties."  Id. (internal quotation marks omitted).

In our analysis we initially note that although the birth of Zheng's three children after the denial of his asylum application obviously is a significant factor in this case as the possibility that he might suffer persecution arises from it, the BIA's characterization of Zheng's motion to reopen as being based on those births rather than changed circumstances in China is inaccurate.  Indeed, in Zheng's brief to the BIA in support of the motion, he argued that "[t]hese proceedings should be reopened as the evidence in support of [the] motion was unavailable at the time of the original hearing, and the evidence documents conditions in China which have arisen since that date."  Id. at 12.  Therefore we will discuss whether the BIA abused its

---

[4]We have rejected Aird's position, see Yu v. Attorney General, 513 F.3d 346, 348-49 (3d Cir. 2008), as has the BIA, see In re C-C, 23 I. & N. Dec. 899, 901 (BIA 2006).

20

discretion in concluding that Zheng failed to meet his burden to demonstrate changed circumstances in China.

In Li v. Attorney General, 488 F.3d 1371 (11th Cir. 2007), the Court of Appeals for the Eleventh Circuit reviewed the BIA's denial of a motion to reopen an asylum case. The petitioner had submitted several of the documents that Zheng and Chen have submitted in these cases. In particular, the petitioner in Li offered as evidence the State Department's Country Reports for 2004 and 2005, the 2005 Commission Report, and Aird's testimony to Congress in 2002. Id. at 1373. The petitioner in Li also submitted her affidavit and that of her mother, the State Department's Country Report for 2003, the Consular Information Sheet for 2005, and two unidentified newspaper articles from 2005. Id.

In reviewing the BIA's denial of the motion to reopen the court in Li discussed various statements contained in the affidavits describing examples of forcible sterilization from the petitioner's hometown. See id. at 1375. The court observed that the petitioner's "other evidence corroborated her anecdotal evidence of a change in policy in her province and substantiated her fear that local officials in Fujian have the incentives and discretion to sterilize women with more than one child." Id. In particular, the court referred to statements contained in the State Department's 2005 Country Report. The court concluded that "Li's evidence of a recent campaign of forced sterilization in her home village, evidence consistent with the conclusion of recent government reports, clearly satisfied the criteria for a motion to reopen her removal proceedings." Id. Contrary to the BIA's findings in Li as well as in Zheng's case, the court stated that

21

"the [C]onsular [I]nformation [S]heet established that, for some purposes at least, the Chinese government considers foreign-born children of Chinese nationals equivalent to children born in China."[5] Id. at 1376.

We recognize that, as the Court of Appeals for the Second Circuit explained in Wang v. BIA, 437 F.3d 270 (2d Cir. 2006), there is an inherent tension in the criteria setting forth the standards for the review of BIA decisions that lack detailed discussion:

> On the one hand, the BIA abuses its discretion if it fails completely to address evidence of changed country circumstances offered by a petitioner. . . . The BIA should demonstrate that it has considered such evidence, even if only to dismiss it. In so doing, the BIA should provide us with more than cursory, summary or conclusory statements, so that we are able to discern its reasons for declining to afford relief to a petitioner.

_____

[5]Although Zheng submitted the Consular Information Sheet for 2003 rather than 2005, the 2003 version contains statements to the same effect. See App. at 90 ("If one or both parents of a child are PRC nationals who have not permanently settled in another country, then China regards the child as a PRC national and does not recognize any other citizenship the child may acquire at birth, including U.S. citizenship.").

22

On the other hand, we do not hold . . . that where the BIA has given reasoned consideration to the petition, and made adequate findings, it must expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner. . . . While the BIA must consider such evidence, it may do so in summary fashion without a reviewing court presuming that it has abused its discretion.

Id. at 275 (internal citations and quotation marks omitted). Notwithstanding this tension "[immigration judges] and the BIA have a duty to explicitly consider any country conditions evidence submitted by an applicant that materially bears on his claim," and "[a] similar, if not greater, duty arises in the context of motions to reopen based on changed country conditions." Guo v. Gonzales, 463 F.3d 109, 115 (2d Cir. 2006) (internal quotation marks omitted); see also Yang v. Gonzales, 427 F.3d 1117, 1122 (8th Cir. 2005) ("If an agency makes a finding of fact without mentioning or analyzing significant evidence, its decision should be reconsidered.") (internal quotation marks omitted).

In Zheng's case the BIA did little more than quote passages from its earlier decision in J-W-S- without identifying – let alone discussing – the various statements contained in the record before it that Zheng submitted in support of his motion to reopen. Indeed, the BIA did not mention Zheng's affidavit, the Changle City letter, the Consular Information Sheet from 2003, the Commission Report for 2005, the Fujian Regulation from 2002, Wu's testimony to Congress from 2004, or the two

23

newspaper articles. Moreover, these documents were not discussed in J-W-S-, the case on which the BIA almost exclusively relied. See J-W-S-, 24 I & N Dec. at 189-94. Given the BIA's failure to discuss most of the evidentiary record in Zheng's case, as well as the conclusions that the Court of Appeals for the Eleventh Circuit reached in Li concerning at least some of the documents in this case, we will vacate the BIA's denial of Zheng's second motion to reopen his case and remand the matter to the BIA for further proceedings.[6]

---

[6]We note that the court in Wang affirmed the BIA's denial of the petitioner's motion to reopen the case, even though the BIA's decision was not more detailed than the analysis of the BIA in Zheng's case. See 437 F.3d at 275. Zheng, however, submitted documents that were not submitted in Wang, as well as a personal affidavit, and, that given the more extensive record in this case, we find the BIA's cursory discussion of the record to be an abuse of discretion.

We also note that after the parties filed their briefs on this petition the Court of Appeals for the Seventh Circuit decided Lin v. Mukasey, 532 F.3d 596 (7th Cir. 2008), a case that Zheng has brought to our attention in a letter pursuant to Fed. R. App. P. 28(j). Lin discussed the 2006 Country Report for China issued in 2007. That report, however, is not part of the record in Zheng's case. Undoubtedly Lin could be helpful to Zheng and he might bring that case to the BIA's attention on the remand and seek to supplement the record on the remand to include the 2006 Country Report. On the other hand, we are aware that the BIA discussed J-W-S- in its decision on Zheng's

24

2. <u>Equitable tolling</u>

Zheng contends that the time limitations on filing a second motion to reopen should be equitably tolled in his case because his attorney did not inform him of the hearing date on his asylum application and it was that failure that led to the dismissal of the application on March 10, 1997. Furthermore, the appeal that the same attorney filed from the denial of the application to the BIA was untimely, a shortcoming that led the BIA to deny the appeal on December 18, 1997. It might be thought that inasmuch as we are remanding this case to the BIA without regard for tolling of the limitations period that Zheng's equitable tolling contention is moot. We are satisfied, however, that the tolling question is not moot because if Zheng prevails on the tolling point he ultimately might obtain a reopening and be granted asylum without showing changed circumstances in China in accordance with 8 C.F.R. § 1003.2(c)(1), (3)(ii). Therefore we consider the equitable tolling argument on the merits.

The BIA rejected the equitable tolling contention because it held that Zheng's lack of diligence in pursuing his asylum claim demonstrated that tolling was not justified. <u>See</u> <u>Mahmood v. Gonzales</u>, 427 F.3d 248, 252-53 (3d Cir. 2005). We agree with the BIA. In this regard we point out that Zheng acknowledges that he found out in September 1997 that his

motion and the 2006 Country Report was in evidence in <u>J-W-S-</u>, so that it is possible that the BIA will give the 2006 Country Report little weight.

25

attorney had not advised him of the hearing date on his asylum application and also discovered at that time that his failure to appear at the hearing led the immigration judge to deny his application for asylum. Then the BIA denied his appeal from the dismissal of his asylum claim because it was untimely on December 18, 1997. Yet Zheng did not file his original motion to reopen until June 17, 2002, a delay that demonstrates that he was not diligent in pursuing his asylum claim. His lack of diligence cannot be gainsaid because he had known for over four years when he first sought to reopen the proceedings that his asylum application had been denied by reason of his failure to appear for his hearing.

Furthermore, when he filed his first motion to reopen he did not assert that his attorney at the time of the asylum application had been ineffective, even though he was being represented by an attorney who had not represented him when he filed his unsuccessful asylum application. Rather, he based his motion solely on his claim that "there ha[d] been a significant change in circumstances" predicated on the birth of his three children after the immigration judge denied his asylum application on March 10, 1997. App. at 177. Moreover, his attorney on his first motion to reopen, on information and belief asserted, contrary to what actually had happened, that Zheng had appeared at the hearing on March 10, 1997, and that his appeal to the BIA was timely. The totality of the circumstances makes it clear that Zheng was not diligent in pursuing his asylum application and we accordingly reject his equitable tolling contention. We do not understand how we could come to any other result, for the history of his case demonstrates that the type of exceptional circumstances justifying equitable tolling are not

26

present here.  See Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005).

B.  Chen

The BIA also denied Chen's motion to reopen his case. Although the BIA began by characterizing Chen's claim as one based on changed personal circumstances rather than changed circumstances in China, it nevertheless discussed the latter question.  According to the BIA:

> [T]he evidence reflects conditions substantially similar to those that existed at the time of his hearing, with the government officially prohibiting the use of force to compel persons to submit to abortion or sterilization, despite some reports of coercion by local authorities, and generally attempting to enforce compliance with the one-child policy through the use of economic incentives and sanctions and other administrative measures.  The recent evidence submitted generally confirms a continuation of problems that previously existed.

> Like our recent decision in [J-W-S-], [Chen] has not provided sufficient evidence that any sanctions [he] may experience if he returns to China would rise to the level of persecution.  The mere existence of a policy under the local regulations of sterilization if a couple has two children does not demonstrate that such policy

27

would be enforced in Fujian Province by physical coercion, and there is no current evidence that couples returning with two United States citizen children would be sterilized. The policies existed at the time of [Chen's] hearing, and reports of some recent instances of coercion are no different from such reports at the time of the hearing below. [Chen's] reliance on 2006 statements from the National Population and Family Planning Committee and the Fujian [P]rovince do not show that Fujian Province will forcibly sterilize [Chen] in violation of official policy if he is returned to China. Thus, we do not find that the evidence presented by [Chen] reflects a material 'change' such that the time limitation does not apply to the present motion.

App. at 3 (internal citations omitted).

The above passage represents the BIA's entire discussion of the question whether Chen satisfied his burden to demonstrate changed circumstances in China. As in Zheng's case, the BIA failed to refer to most of the documents that Chen submitted in support of his motion, whether explicitly or by citation to an earlier decision,[7] including his affidavit, the letter

_____

[7]In the relevant part of the BIA's decision, it discussed J-W-S- and Matter of C-C-, 23 I & N Dec. 899 (2006). App. at 3. We note that in a situation like the present one, where the evidentiary record contains documents that were not at issue in

28

from his mother, the Consular Information Sheet from 2003, the Commission Report for 2005, Wu's testimony to Congress from 2004, the Fujian Regulation dated July 26, 2002, and the two newspaper articles from 2005.

In fact, the BIA's discussion in Chen's case amounts to a series of conclusory statements, and fails to offer even a cursory review of the record. For example, the BIA stated that "[Chen] has not provided sufficient evidence that any sanctions [he] may experience if he returns to China would rise to the level of persecution." Id. Even though the BIA may have been correct in its summary conclusion, there is no escape from the reality that it did not explain why the evidence that Chen submitted was not sufficient.

Moreover, although the BIA concluded that "[t]he mere existence of a policy under the local regulations of sterilization if a couple has two children does not demonstrate that such policy would be enforced in Fujian Province by physical coercion," and that "there is no current evidence that couples returning with two United States citizen children would be sterilized," id., the BIA did not discuss Chen's affidavit (which

---

an earlier decision, mere reference to that earlier decision is insufficient to warrant adopting its conclusions. Rather, the BIA must assess any evidence that bears on the questions of fact which it must decide. See Yang, 427 F.3d at 1122 ("If an agency makes a finding of fact without mentioning or analyzing significant evidence, its decision should be reconsidered.") (internal quotation marks omitted).

described instances of forced sterilization), the State Department's 2005 Country Report (which the court in <u>Li</u> concluded was "consistent" with claims of forced sterilization), or the Consular Information Sheet from 2003 (which contained statements showing that, for some purposes at least, the Chinese government considers foreign-born children of Chinese nationals equivalent to children born in China). Given the BIA's failure to discuss most of the evidentiary record in Chen's case, and for reasons parallel to those we discussed in analyzing Zheng's case, we will vacate the BIA's denial of Chen's motion to reopen the case and remand to the BIA for further proceedings.[8]

_____

[8]Respondent has filed a letter pursuant to Fed. R. App. P. 28(j) in Chen's case in which he cites <u>Shao v. Mukasey</u>, No. 07-2689, __ F.3d __, 2008 WL 4531577 (2d Cir. Oct. 10, 2008), upholding the BIA's conclusion in that case that the petitioner had not provided sufficient evidence that any harm the petitioner would face if he returned to China would rise to the level of persecution. Respondent regards <u>Shao</u> as being based on evidence identical or substantially similar to the evidence Chen submitted. Certainly, on the remand respondent may bring this case to the BIA's attention, and the BIA in its discussion of the evidence in Chen's case is free to consider <u>Shao</u>, but respondent's citation of that case does not overcome the deficiency in the BIA's decision in this case. By the same token Chen may bring <u>Lin v. Mukasey</u> and the 2006 Country Report that we discuss above to the BIA's attention on the remand.

Respondent in the same letter indicates that "[s]everal

30

## V. CONCLUSION

We think it is important to point out that both Zheng and Chen are from Fujian Province and thus quite naturally their cases focus on conditions in that province. We understand that conditions with respect to limitations on the birth of children are not uniform in China and thus the facts in this case may not be representative of the situation throughout that country. We also reiterate that in reaching our conclusion that we will remand these cases to the BIA, we do so exclusively by reason of procedural shortcomings that we find existed in the BIA proceedings, and thus we do not imply that the BIA reached an incorrect result predicated on the records before it in either case. In short, the abuse of discretion relates to how the BIA reached its result and not the result itself. Indeed, we are well aware that respondent contends that the documents the petitioners presented should not lead to the reopening of their proceedings. Certainly, if the BIA agrees with this contention it is free to say so on the remands as we do not reject respondent's contentions on this point. In view of our conclusions we will vacate the

---

circuit courts of appeals have recently deferred to the [BIA's], reasonable determination . . . that an alien may file a successive asylum application after being ordered removed only if he does so through the filing of a motion to reopen in which he establishes a material change in conditions in the county of removal." We agree with this unremarkable statement, which merely restates the requirements of 8 C.F.R. § 1003.2(c)(3)(ii), and, as we make clear, the BIA might conclude on the remand that petitioners did not satisfy this standard.

31

order of July 16, 2007, in Zheng's case and the order of June 29, 2007, in Chen's case and will remand the cases to the BIA for further proceedings consistent with this opinion.  In particular, the BIA should reconsider the appeal in both petitioners' cases and make a more complete analysis of the evidence they have submitted.