OPINION
PER CURIAM.
Petitioner Shu Rong Cai, a native and citizen of China, entered the United States on or about February 14, 2001. On November 8, 2005, Cai filed an application for asylum under Immigration & Nationality Act (“INA”) § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and for protection under the Convention Against Torture, 8 C.F.R. § § 1208.16(c), 1208.18, claiming a fear of persecution on account of her opposition to China’s population control policies. In her asylum application, Cai stated that she and a boyfriend had a child together who was born on August 9, 2003, and, now, she was pregnant with a second child. She feared that if she returned to China she would be forcibly sterilized because of her two children. On January 13, 2006, removal proceedings were initiated against Cai when the former Immigration & Naturalization Service filed a Notice to Appear with the Immigration Court, charging that she was subject to removal pursuant to INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. Cai eventually admitted the allegations in the NTA.
A hearing on the merits was held on March 14, 2007. At the hearing, Cai testified that she was born in Fujian Province. She has two children born here in the United States, a son, Eric, born in 2003, and a daughter, Sophia, born in 2006. She testified that she is not close to the children’s father, and that, after she became pregnant with their second child, Cai asked him to marry her, but he revealed that he was already married to someone else. Cai worked as a babysitter. If she returned to China she would live with her parents. Cai testified that she had several different reasons for her fear of forced sterilization. First, when she lived in China she regularly saw fliers and posters in public which described the family planning policies of the Chinese government. Second, both her aunt and her sister-in-law were forced to undergo sterilization after they had borne two children; Cai submitted affidavits from both women.
Third, Cai believed that if she returned to China her children would be treated as Chinese nationals and would count against the number of children she may bear. Cai asked her mother, who lives in China, to inquire with local authorities as to how the *595 children would be regarded in terms of family planning regulations, and her mother reported in an affidavit, which Cai submitted, that she was told the children would count against the limits imposed by the Chinese government. Fourth, Cai noted an affidavit, which related the story of a Chinese couple who bore two children while living in Japan illegally, and, upon their return to China, the husband was forcibly sterilized. Cai also testified that, in addition to forced sterilization, she fears that the Chinese government will fine her as much as $1,500.00, and she also fears that her children, as United States citizens, would not be entitled to free health care and educational benefits.
The Immigration Judge issued a decision at the end of the merits hearing, concluding that Cai did not meet her burden of proof under the asylum statute to establish that she has a well-founded fear of future persecution.[1] The IJ also denied withholding of removal, and found that Cai failed to show that it was more likely than not that she would be tortured upon her return to China. The IJ noted at the outset that he had reviewed all of Cai’s many documents offered in support of her claims. Since Cai made no allegation of past persecution, her asylum case depended solely on whether she could show a well-founded fear of persecution in the future. The IJ found that Cai’s testimony was candid and honest.
However, the IJ made the following findings which undercut Cai’s claim of a well-founded fear of forced sterilization. First, she knew of no one returning to China from the United States with two children who had been sterilized. Second, although she saw many posters and fliers announcing the family planning policies of the Chinese government when she lived in China, none of those related to women returning from the United States with two children born there. Third, Cai knew of two persons who had actually been sterilized, her aunt and her sister-in-law, but neither of them bore their children overseas. Fourth, Cai’s affidavit from a Chinese man who had lived in Japan with his wife could be given little weight because the couple returned to China from Japan, not the United States, there were no original documents evidencing the husband’s forced sterilization, there were no witnesses to testify to the experience who might then be subject to cross-examination, and Cai herself did not know the couple. Her mother’s affidavit was not corroborated by any letter from the local authorities themselves. The IJ further found that, although Cai might face a fine of $1,500.00 upon her return to China, a fine of this amount under the circumstances presented would not constitute persecution.
With respect to the many documents submitted by Cai, the IJ took particular note of a letter from the State Department’s Bureau of Democracy, Human Rights and Labor, dated January 9, 2007, to Ms. Randra Zagzoug of the Department of Homeland Security. The IJ set forth the contents of the letter in some detail, including this statement: “[T]here is evidence that [forced abortions or sterilizations] have taken place as revealed by the case of Chen Guangcheng of Linyi City in Shandong Province” but “[rjegarding the alleged existence of an official government policy mandating the sterilization of one partner of couples that have given birth to two children [in the United States], United *596 States officials in China are unaware of any such a policy at either the national or the provincial level.” App. 15.
Cai appealed to the Board of Immigration Appeals, and filed a motion for a remand. On October 10, 2008, the Board dismissed the appeal, concluding that the IJ had not erred, and denied the remand motion.[2] The Board agreed with the IJ that Cai’s evidence did not establish an objectively reasonable fear of future persecution. The Board reasoned that her documentary evidence regarding China’s population control laws was only general in nature with respect to China’s one-child policy, and it, or evidence similar to it, had been fully considered and rejected before in the Board’s recent decisions, Matter of J-W-S-, 24 I. & N. Dec. 185 (BIA 2007), and Matter of S-Y-G- 24 I. & N. Dec. 247 (BIA 2007). See also Yu v. Att’y Gen. of U.S., 513 F.3d 346 (3d Cir.2008). The documentary evidence did not establish that forcible sterilization is mandated in Fujian Province after the birth of a second United States citizen child. Specifically pointing to the January 9, 2007 State Department letter relied upon by the IJ, the Board stated that the evidence established no uniform policy regarding the implementation of population control laws with respect to children born outside of China.
The Board also reviewed the individualized evidence presented by Cai, including her testimony that she had observed posters and fliers in China announcing China’s family planning policies, that she would face a possible fine of $1,500.00 upon returning to China, the sterilizations of her aunt and sister-in-law, the affidavit from the Chinese man who returned from Japan with two children and was forcibly sterilized, and the affidavit from her mother reporting her interview with local family planning officials. The Board agreed with the IJ that this evidence did not establish that Cai would be singled out for persecution, and the Board specifically held that Cai’s mother’s affidavit was entitled to limited weight because it contained multiple levels of hearsay.
With respect to the motion for remand, the Board found that the documents submitted with the motion were available at the time of the March 2007 hearing, and/or were cumulative of the evidence already in the record and the other documents previously analyzed in cases cited by the Board. Cai has timely petitioned for review of the Board’s decision.
We will deny the petition for review. We have jurisdiction under INA § 242(a), 8 U.S.C. § 1252(a)(1), (b)(1), and, here, to the extent that the Board deferred to the IJ’s reasoning in part, we review the Board’s decision but consider the IJ’s as well as a matter of logic. See Abdulrah-man v. Ashcroft, 330 F.3d 587, 591 (3d Cir.2003). To qualify as a “refugee” under INA § 101(a)(42), Cai had to establish that she was persecuted for failing or refusing to undergo involuntary sterilization or for “other resistance” to China’s population control policy, or alternatively, that she has a well-founded fear of being persecuted, once returned to China, for her resistance to the population control policy. 8 U.S.C. § 1101(a)(42); Li v. U.S. Attorney. Gen., 400 F.3d 157, 163 (3d Cir.2007). If so, she is deemed to have been persecuted on account of a political opinion. Id. Cai did not claim that she had been persecuted in the past.
An applicant bears the burden of proving eligibility for asylum. Shardar v. Att’y Gen. of U.S., 503 F.3d 308, 312 (3d Cir. 2007). In the absence of evidence of past *597 persecution, the applicant must demonstrate a subjective fear of persecution through credible testimony that her fear is genuine, Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir.2003), and the applicant must show that a reasonable person in her circumstances would fear persecution if returned to the country in question, see id. The Board’s findings in this regard “are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.” 8 U.S.C. § 1252(b)(4)(B). See also Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Under this deferential standard, Cai must establish that the evidence does not just support a contrary conclusion but compels it. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir.2002).
The more exacting withholding of removal standard requires an alien to show by a “clear probability” that her life or freedom would be threatened on account of a protected ground in the proposed country of removal. Immigration & Naturalization Serv. v. Stevie, 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). See also Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 430,107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (“would be threatened” standard has no subjective component). In making out a CAT claim, the burden of proof is on the applicant to establish that it is more likely than not that she would be tortured in her native country. 8 C.F.R. § 1208.16(c)(2). Cai contends that forced sterilization amounts to torture.
Cai contends in her brief on appeal that she has established a well-founded fear of forced sterilization through her individualized and documentary evidence, and that the Board erred because it failed to consider all the documents she submitted. Furthermore, the Board abused its discretion in denying her motion to remand. We begin first with Cai’s argument that the Board did not consider all of her material evidence. Under the standards we set forth in Zheng v. Att’y Gen. of U.S., 549 F.3d 260 (3d Cir.2008), the Board must explicitly consider any country conditions evidence that materially bears on an applicant’s claim, see id. at 268.
In evaluating Cai’s documentary evidence, the Board relied to a large extent on its prior evaluation of identical or similar evidence of alleged Chinese coercive population measures, as reported in Matter of S-Y-G-, 24 I. & N. Dec. 247, and Matter of J-W-S-, 24 I. & N. Dec. 185. We have reviewed the Administrative Record, which exceeds two-thousand (2000) pages, and we conclude that Cai’s documentary evidence is indeed identical or similar to evidence the Board, and even this Court, has previously considered and found lacking. In Matter of J-W-S-, the Board examined and found unpersuasive an affidavit from John Shields Aird, a 2003 administrative decision from the Fujian Province Department of Family-Planning Administration, a May 22, 2003 administrative opinion from the Changle City Family-Planning Board with regard to the family of Zheng Yu He, and a Q & A sheet for Changle City Family Planning. 24 I. & N. Dec. at 189-92.[3] Citing the State Department’s 2006 Country Report, the Board noted that Chinese citizens who violate family planning policies face only economic penalties, such as job loss and destruction of property. Id. at 190. The Board also noted that a 2007 State Department report stated that children born outside of China are not considered permanent residents of China and therefore are not counted against parents for purposes of family planning compliance. Id. at 190-91. Fur *598 thermore, according to government publications issued in 2005, 2006, and 2007, Fujian Province is lax and uneven in its family planning policy enforcement, that physical coercion is officially condemned, and any sanctions returning parents may face would be economic. Id. at 194.
Matter of S-Y-G-, 24 I. & N. Dec. 247, is the decision issued by the Board following the remand in Slum Yung Guo v. Gonzales, 463 F.3d 109 (2d Cir.2006), and, in it, the Board held that the documents submitted, which included the 2003 Chan-gle City Administrative Opinion and the 2003 Fujian Province Administrative Decision, reflected general birth planning policies in the applicant’s home province that did not specifically show any likelihood that she or similarly situated Chinese nationals would be persecuted as a result of the birth of a second child in the United States. 24 I. & N. Dec. at 254-256. The Board noted that a 2007 Department of State letter established that children born outside of China, and who are not registered as permanent residents of China, are “not counted” against parents for purposes of family planning compliance. The State Department was not aware of either a national or provincial policy requiring that a parent be sterilized after the birth of two children. Id. at 255-56.[4]
In Zheng, 549 F.3d 260, the Board failed to discuss “most of the evidentiary record.” Id. at 269. That is not the case here. Comparison of the documentary evidence analyzed in those cases cited by the Board with that provided by Cai reveals very similar conditions, namely, that there is some evidence of forced sterilization, but insufficient evidence from which to conclude that sterilization is mandated for Chinese couples returning from the United States with two U.S. citizen children. Nevertheless, Cai contends, in reliance upon Zheng, 549 F.3d 260, that the Board overlooked material evidence. In addition to the documentary evidence previously analyzed in those cases cited by the Board, Cai contends on appeal that she had even more evidence to support her contention that her fear of forced sterilization is well-founded.
In her brief, Cai discusses the State Department’s “Tips for Travelers to the People’s Republic of China,” dated February 14, 2007, which states that China does not recognize dual nationality, App. 1302. Cai notes a news report from the National Population and Family Planning Commission of China, dated April 27, 2006, which discusses the importance of maintaining family planning policies in the future despite the growing gender imbalance, App. 1288-89. Other documents submitted by Cai and not mentioned specifically by either the IJ or the Board consist of western news accounts of Chinese population control policies, including a LifeSiteNews.com article titled “Forced Abortion Still a Reality in China Says New Amnesty Report,” dated May 27, 2005, App. 1652-53, an article from CNN.com titled “Forced abortions for China-Taiwan couples,” dated November 3, 2006, App. 1287, and a New York Times article titled “China Detains Lawyers for Peasants’ Advocate,” dated August 18, 2006, App. 1277-78. See Petitioner’s Brief, at 15-17. Cai points to *599 other documentary evidence emanating from government sources. See Petitioner’s Brief, at 17-19.
All of this additional documentary evidence is cumulative of other documentary evidence in the record which the Board adequately considered. There is no indication on this record that the Board overlooked any material, non-cumulative documentary evidence relevant to Cai’s claim for asylum. Therefore, we conclude that the Board’s review of the country conditions evidence in Cai’s case fully comports with Zheng.
With the matter of the Board’s thoroughness resolved, we turn to the merits of Cai’s individualized case for asylum and the documentary evidence specifically discussed by the IJ and Board. We conclude that substantial evidence supports the Board’s conclusion that the evidence submitted does not demonstrate that forcible sterilization is mandated in Fujian province after the birth of a second United States citizen child. As properly noted by the IJ, neither Cai’s aunt nor her sister-in-law bore their children in the United States, and Cai herself knew nothing about the husband who returned from Japan with two children and allegedly was forcibly sterilized, and whose affidavit, App. 1334, was prepared in connection with someone else’s asylum case. Cai contends that the 2007 State Department letter discussed by both the IJ and the Board actually supports her contention that if she returns to China with two children she will be subject to sanctions, but, as the IJ noted, sanctions need not involve forced sterilization, and the letter does not demonstrate that Cai automatically will be subject to sanctions. Rather, the letter states only that parents who choose to register their children as Chinese permanent residents for financial reasons, for example, to obtain a free public education, would not be able to exclude them from the number of children allowed under Chinese family planning policy, App. 1494.
Last, the IJ and the Board explicitly considered an affidavit from Cai’s mother relating to a visit she made at Cai’s request to the local family planning office. The Board gave the affidavit little weight because it contained multiple levels of hearsay, and the IJ was not persuaded by the affidavit because it was not corroborated by any letter from the local authorities themselves. Cai’s mother’s affidavit states in its entirety: “I am the mother of Cai, Shu Rong, who went to family planning of Tan Tou Town to ask if people having two children born in the United States return back to China will be sterilized. The officials of Family Planning told me that each Chinese citizen must obey Chinese Family Planning Policy, giving birth to two children will be sterilized. I asked them to ■write me a proof, but they did not agree to.”
The affidavit constitutes non-cumulative evidence in support of Cai’s claim of a well-founded fear of forced sterilization, but the Board found that it was not reliable and the IJ found that it did not prove Cai’s ease without corroboration. The agency’s findings in this regard “are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.” 8 U.S.C. § 1252(b)(4)(B). Having considered the affidavit carefully, we conclude that the record does not compel a contrary conclusion.
Because Cai failed to show past persecution or a reasonable fear of future persecution under the lower burden of proof required for asylum, she is necessarily ineligible for withholding of removal. Cardoza-Fonseca, 480 U.S. at 430-32, 107 S.Ct. 1207. In addition, the record does not compel a conclusion that Cai met her *600 burden of establishing that it is more likely than not that she will be tortured upon her return to China, 8 C.F.R. § 1208.16(e)(2). With respect to her remand motion, Cai in her brief points to three ai'ticles which she contends were not previously available at the time of her merits hearing: an article dated January 23, 2007, from CNN.com titled “China Sticking To One Child Policy,” a statement from the National Population and Family Planning Commission, dated December 28, 2006, and an article from the New York Times dated August 18, 2006, titled “China Detains Lawyers for Peasants Advocate.” See Petitioner’s Brief, at 27-28. These items pre-date the merits hearing and were readily available. Thus, the Board did not abuse its discretion in applying 8 C.F.R. § 1003.2(c)(1) (“A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing”) to deny the remand motion. Moreover, the items break no new ground and merely restate what already has been amply stated in the record.
For the foregoing reasons, we will deny the petition for review.

. The IJ found that, although Cai entered the United States in 2001, and she did not file her asylum application until 2005, the application was not time-barred under INA § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B), because the birth of her second child constituted a "changed circumstance,” see 8 C.F.R. § 1208.4(a)(4)(h).

. On October 23, 2008, the Board reissued its decision because it had been mailed to the wrong address.

. We also rejected the Aird affidavit in Yu, 513 F.3d at 348-49.

. In Shao v. Mukasey, 546 F.3d 138, 165 (2d Cir.2008), the Second Circuit denied the petition for review relating to Matter of S-Y-G-, stating (“[w]hile official documents from Fuji-an Province and Changle City indicate that Chinese nationals who violate birth limits while abroad will be subject to the same punishment as citizens whose violations occur in China, the BIA reasonably observed that these documents made no “referfence] to sterilization, much less forced sterilization,” as a possible punishment”). The court also discussed with approval the Board's decision in Matter of J-W-S-. See Shao, 546 F.3d at 163-64 & n. 26, 172.