**MEI XING REN, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES.**

No. 08–4734.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Nov. 27, 2009.

Filed: Dec. 29, 2009.

Fuhao Yang, Esq., New York, NY, for Petitioner.

Richard M. Evans, Esq., Thomas W. Hussey, Esq., Virginia M. Lum, Esq., Sada Manickam, Esq., United States Department of Justice Office of Immigration Litigation, Washington, DC, Michael B. Mukasey, Esq., Debevoise & Plimpton, New York, NY, for Attorney General of the United States.

Before: RENDELL, FISHER and GARTH, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

Mei Xing Ren petitions for review of the Board of Immigration Appeals' ("BIA") final order of removal. For the following reasons, we will deny her petition.

### I.

Ren, a native and citizen of China, entered the United States in 2005 without being admitted or paroled. The Government later charged her as removable on that basis. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Ren concedes removability, but seeks asylum, statutory withholding of removal, and withholding of removal under the Convention Against Torture ("CAT") on the grounds that she suffered past persecution and faces future mistreatment on account of her imputed political opinion.

According to Ren, whose testimony the Immigration Judge ("IJ") found credible in all respects, a private development company seized land without compensation in her family's village, including land owned by her family that it used for its subsistence as well as land owned by other villagers. The Chinese government "sided" with the developer and warned the townspeople not to interfere with the development. Ren's father, along with other villagers, sent a letter of protest to their Village Committee on July 7, 2002. Her father, again along with other villagers, also participated in a demonstration against the development in December 2002. Ren testified that she was not involved in any of these activities. Soon thereafter, her father learned that Chinese authorities had begun arresting those who took part in the protest, and he went into hiding.

Chinese authorities ultimately located and arrested Ren's father on March 20, 2005. On that day, and on the advice of "others," Ren went to the prison where her father was being held with money and gifts for a prison official in an effort to secure her father's release. The prison official, in what Ren refers to as "sexual harassment," closed the door behind her, pushed her against a table, and tried to remove her clothes. Ren testified that she grabbed an ashtray from the table and hit the official in the face, which caused him to scream and begin bleeding, then fled. When she returned home, she told her mother what had happened and her mother urged her to seek asylum in the United States. Ren contacted a smuggler and left China six days later.

Ren's father was later tried before a jury and convicted of various crimes against the development company (including charges of breaking and entering, destroying equipment, and blocking construction), charges that Ren insists were fabricated. Ren's father was sentenced to ten months of imprisonment, which he served, and has since been released. Ren also testified that Chinese authorities continue searching for her at her house, claiming that they want to see her because she attempted to bribe and attacked a public official. Ren claims that these events show that the Chinese government has imputed to her her father's political opinion, which she characterizes as opposition to the government's role in the seizure of their land.

The IJ denied relief. The IJ explained that neither the attempted sexual assault nor any deprivation Ren suffered as a result of her family's loss of land rose to the level of past persecution. The IJ further concluded that there was no evidence that the Chinese government imputed any particular political opinion to her, and that she thus did not face persecution on account of a statutorily-protected ground. Finally, the IJ concluded that Ren had presented no evidence that she would be tortured if returned to China. The BIA essentially agreed with and supplemented these conclusions. In particular, the BIA concluded that, even if the attempted sexual assault had risen to the level of persecution, there was no evidence that it was on account of Ren's imputed political opinion. The BIA also concluded that her father had been prosecuted for having committed crimes, not persecuted for his political opinion. Ren petitions for review.[1]

## II.

On review, Ren primarily challenges the IJ's and BIA's determinations that neither the attempted sexual assault nor any punishment she might face in the future would be on account of any statutorily protected ground—in this case, on account of any political opinion that the Chinese government imputes to her. *See Jian Zhau Zheng v. Att'y Gen.*, 549 F.3d 260, 266 (3d Cir.2008); 8 U.S.C. §§ 1101(a)(42), 1158(b) & 1231(b)(3). Ren, however, cites no evidence of record that she contends the IJ

---

1. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). "Because the BIA adopted some of the findings of the IJ and made additional findings, we will review the decisions of both the BIA and IJ." *Gomez–Zuluaga v. Att'y Gen.*, 527 F.3d 330, 339 (3d Cir. 2008). "We defer to the BIA's findings if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Sioe Tjen Wong v. Att'y Gen.*,

539 F.3d 225, 230 (3d Cir.2008) (citations and internal quotation marks omitted). "Under the deferential substantial evidence standard, the BIA's findings 'must be upheld unless the evidence not only supports a contrary conclusion, but compels it.'" *Id.* (citations omitted). We have plenary review over its conclusions of law, subject to established principles of deference on agency review. *See id.* at 231.

or BIA overlooked, and cites no evidence that compels a conclusion contrary to the one they reached. Instead, she argues that the Chinese government has imputed a political opinion to her from the mere fact that she tried to help her father "get out of the government's persecution" and "fought" with the prison official. (Petr.'s Br. at 15.) She relies for that proposition on *Chavarria v. Gonzalez*, 446 F.3d 508 (3d Cir.2006), but that case is inapposite.

In *Chavarria*, we held that a political opinion had been imputed to an otherwise apolitical individual because: (1) he came to the aid of women whom members of a paramilitary group had attacked and who turned out to be members of a political organization opposed to the government, *see id.* at 513, 518; (2) the same attackers later surveilled him at his home, *see id.* at 518–19; and (3) he was attacked and threatened with death, with the comment "[w]e are going to leave you alone today, but if we ever catch you again you won't live to talk about it," *id.* at 519. Thus, there was no indication that the petitioner in *Chavarria* was surveilled and attacked for any reason other than the assistance he rendered to people who turned out to be political dissidents.

In this case, by contrast, there is no evidence that Ren was assaulted or that authorities are seeking her because the Chinese government imputes her father's political opinion to her. Ren testified that, unlike her father, she never took part in the villagers' protest against the developer's actions. (A.144–45.) She did not testify that she expressed any political opinion during her visit to the police station or to anything else suggesting that the attempted assault was politically motivated. (A.145–46.) To the contrary, she testified that, when the prison official closed the door behind her, she asked him what he was doing and "he said a man and a woman inside a room. What, what do you

think." (A.146.) Moreover, she testified that, when authorities sought her at her home, they told her mother that they did so "because I had intention to bribe official, and, also, attack official." (A.147.) This testimony constitutes substantial evidence in support of the IJ's and BIA's conclusions that Ren neither suffered nor faces mistreatment on account of any political opinion the Chinese government imputes to her, and our review of the record confirms that Ren presented no evidence that compels a contrary conclusion. For that reason, we may not disturb the denial of her applications for asylum or statutory withholding of removal.

Finally, Ren challenges the IJ's and BIA's conclusion that she failed to show it more likely than not that she would be tortured on return to China. *See Gomez–Zuluaga*, 527 F.3d at 349. Once again, however, Ren cites no evidence of record that compels a contrary conclusion, and our review of the record confirms that there is none. Accordingly, we will deny her petition for review.