OPINION
PER CURIAM.
Gayane Grigoryan, citizen of Armenia, petitions for review of an order of the Board of Immigration Appeals (“BIA”). For the following reasons, we will grant the petition for review and remand for further proceedings consistent with this opinion.
I.
Grigoryan entered the United States in June 2001, and was later authorized to remain until May 2002. In February 2006, she applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture (“CAT”), claiming that she suffered past persecution, and feared persecution in the future, on account of her practice of Christianity as a Baptist. The next month, she was placed in removal proceedings for having overstayed her admission period. See Immigration and Nationality Act (“INA”) § 237(a)(1)(B) [8 U.S.C. § 1227(a)(1)(B) ]. She admitted the allegations in the Notice to Appear and conceded the charge of removability.
The Immigration Judge (“IJ”) denied Grigoryan’s application for asylum, noting that it was filed more than one year after her arrival in the United States. See IJ Oral Decision, 20-23. The IJ did not believe that there were extraordinary circumstances warranting waiver of the one-year deadline. See id. The IJ also denied Grigoryan’s application for withholding of removal, concluding that Grigoryan was not credible, and, alternatively, that she had not carried her burden of proof be *607 cause she failed to provide adequate corroborative documentary evidence. See id. at 23-31. In particular, the IJ cited Grigoryan’s conflation of the practices of Jehovah’s Witnesses with those of Baptists, inconsistencies between her testimony and her asylum application, and her failure to provide evidence corroborating her affiliation with the Baptist church. See id. Finally, the IJ concluded that Grigoryan failed to establish that she was likely to be tortured in Armenia. See id. at 31.
The BIA dismissed Grigoryan’s appeal, agreeing that the asylum application was time-barred. The Board further concluded that Grigoryan failed to demonstrate her eligibility for other relief, noting that the IJ “identified specific, cogent reasons in support of the adverse credibility finding, for which the respondent has provided no reasonable explanation.” Grigoryan filed a petition for review of the BIA’s decision.
II.
We have jurisdiction under INA § 242(a)(1) [8 U.S.C. § 1252(a)(1) j.[1] Because the BIA substantially relied on the IJ’s determinations, we consider both the IJ’s and the BIA’s opinions. See Kaita v. Att’y Gen., 522 F.3d 288, 296 (3d Cir.2008). We review the adverse credibility determination for substantial evidence. See Butt v. Gonzales, 429 F.3d 430, 433 (3d Cir.2005). Under this standard, the adverse credibility determinations will be upheld if they are “supported by reasonable, substantial and probative evidence on the record considered as a whole.” Tarrawally v. Ashcroft, 338 F.3d 180, 184 (3d Cir.2003) (internal quotation marks omitted). They may be overturned only if “any reasonable adjudicator would be compelled to conclude to the contrary.” INA § 242(b)(4)(B) [8 U.S.C. § 1252(b)(4)(B)], Adverse credibility determinations must be “supported by specific cogent reasons.”[2] Gao v. Ashcroft, 299 F.3d 266, 276 (3d Cir.2002). Furthermore, we must uphold a determination regarding the availability of corroborating evidence unless “a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable.” INA § 242(b)(4); see also Sandie v. Att’y Gen., 562 F.3d 246, 252 (3d Cir.2009).
III.
The IJ first concluded that Grigoryan “confused the Baptist religion with the Jehovah Witness religion.” IJ Oral Decision, 23. As examples, the IJ cited Grigoryan’s refusal to take an oath, her explanation that she “witnesses to other people,” and her reference to congregation members as “brothers and sisters.” Id. Importantly, though, the IJ failed to acknowledge Grigoryan’s answer when asked, “What do you know about the Baptist religion? Can *608 you name one key principal, one key requirement of a Baptist?” Administrative Record (“A.R.”), 228. Grigoryan replied, “[t]he basis of the religion comes from John the Baptist who was the saint that baptized Jesus Christ. We believe that ... by being baptized a person can come clean of [sins]—and ... can become a real Christian, and they can become one with God.” Id. She also described the process of being baptized, in both Armenia and at the church she attended in Philadelphia, id. at 229-30, and explained that “witnessing” is “not an obligation” but is “how I feel about my religion, and I need to share it.” Id. at 245. In any event, “[b]oth history and common sense make amply clear that people can identify with a certain religion, notwithstanding their lack of detailed knowledge about that religion’s doctrinal tenets.” Rizal v. Gonzales, 442 F.3d 84, 89 (2d Cir.2006). Under these circumstances, we believe that any negative inference drawn by the IJ based on Grigoryan’s alleged “confus[ion]” about the tenets of her religion was not supported by the record.[3]
The Id’s adverse credibility determination also relied on an alleged “significant inconsistency” concerning Grigoryan’s proficiency in the Russian language. See IJ Oral Decision, 26-27. In a space on the asylum application form to indicate “[w]hat other languages do you speak fluently,” Grigoryan wrote “Russian.” A.R. 380. In the written statement submitted in support of her application, Grigoryan stated that she moved to a different neighborhood “because there is a big Russian population in that area, which made my living easier because I didn’t know English very well.” A.R. 395. According to the IJ, these statements were “in total contradiction to” Grigoryan’s testimony that “she only attended [a Russian Baptist] church occasionally because of her difficulty with the Russian language” and “faulty language skills.” IJ Oral Decision, 26-27. We believe that this conclusion is based on too literal a reading of the averment in Grigoryan’s asylum application, which “asked only if [she] was fluent, with no attempt to inquire into various degrees of proficiency one may have with a foreign language.” Senathirajah v. INS, 157 F.3d *609 210, 218 (3d Cir.1998). In fact, Grigoryan explained, “I do understand Russian, but I don’t speak so fluently.” A.R. 233. Because she understood Russian, but not English, her decision to move to a neighborhood in the United States with a large Russian population was not implausible. Therefore, we conclude that substantial evidence does not support the IJ’s finding that Grigoryan provided inconsistent accounts of her proficiency with Russian.
Although Grigoryan produced medical records documenting various injuries allegedly caused by her persecutors, the IJ noted that “there is absolutely no evidence in the record that the injuries described in those reports have any connection to the beatings she experienced as a Baptist.” IJ Oral Decision, 25. Grigoryan testified that she was assaulted on the street in March 2000, when three people jumped on her, pushed her against a tree, held her by the throat, hit her in the head, and cursed her, stating that Baptists were traitors against Christianity and had no place in Armenia.[4] A.R. 222. When she returned home, Grigoryan’s mother called an ambulance. Id. The record contains two statements from the Director of the “Emergency Aid” and “FastMediealHelp” services, indicating that Grigoryan was diagnosed on March 17, 2000, with “hematoma under eyes, waist and thighs because of hitting.” Id. at 261, 426. Grigoryan further claimed that “[ajfter two days our doctor came and saw me at home.” Id. at 223. This allegation is corroborated by a statement from Grigoryan’s doctor:
I ... saw patient Gayane Grigoryan, who had black spots under her eyes, on different parts of her body and a l[u]mp on her head. The patient was scared and weak. She was given antibiotic, pain reliever, and calming medications. After the time of getting those injuries the patient asked for medical help from Fast Help Services. (They) asked for my help on March 19, 2000.
Id. at 423. In addition, a statement from a doctor in the United States supports Grigoryan’s testimony that she saw a doctor “just after I arrived” because of left hip pain. Id. at 225-27, 299-300. Because the date and nature of Grigoryan’s injuries, which she claimed were caused by individuals who targeted her on account of her religion, match so closely with the medical reports, we conclude that substantial evidence does not support the IJ’s conclusion that Grigoryan failed to establish a nexus between her injuries and a protected ground. Cf. Butt, 429 F.3d at 438 n. 11 (acknowledging that support for asylum claim may exist where, inter alia, “the general nature of [the petitioner’s severe injuries] were corroborated by [a] doctor’s note.”).
Although the findings described above are not supported by the record, the IJ did properly identify an inconsistency involving the identity of one of the individuals who attacked Grigoryan in September 2000. In her asylum statement, and again in her brief to the BIA, Grigoryan stated that a person named Ashot, whom she recognized from her cousin’s gym class, punched her in the face. See A.R. 46, 394. She testified, however, that “[t]he guy that I knew, Ashot, wasn’t the one that was hitting me. The other one hit me.” Id. at 224. These statements are clearly inconsistent, and Grigoryan has not offered any explanation for the discrepancy.
*610 IV.
We may affirm an adverse credibility determination even where, as here, a portion of the IJ’s analysis is flawed. See Tarrawally, 338 F.3d at 187 (affirming adverse credibility finding as supported by substantial evidence even though “[s]ome of the IJ’s reasons for his adverse credibility determination were based on presumptions not grounded in the record”); see also Cao He Lin v. U.S. Dep’t of Justice, 428 F.3d 391, 401 (2d Cir.2005) (“[W]e are not required to remand where there is no realistic possibility that, absent the errors, the IJ or BIA would have reached a different conclusion.”). But a remand is warranted when we cannot state with confidence that the IJ would reach the same decision in the absence of the erroneous findings. See Xiao Ji Chen v. U.S. Dep’t of Justice, 471 F.3d 315, 338-39 (2d Cir.2006) (“If the reviewing court undertakes to determine whether remand would be futile, it should assess the entire record and determine whether, based on the strength of the evidence supporting the error-free findings and the significance of those findings, it is clear that the agency would adhere to its decision were the petition remanded.”). In this case, the only error-free finding involves the discrepancy concerning the name of the individual who hit Grigoryan during the September 2000 assault; the remainder of the IJ’s credibility and corroboration determinations are flawed. Under these circumstances, we cannot confidently predict that the IJ would reach the same result on remand.
V.
For the foregoing reasons, we will grant Grigoryan’s petition for review and remand to the Board to determine, without regard to the erroneous adverse credibility and corroborating evidence findings described above, whether Grigoryan is entitled to relief.[5] We express no opinion as to the ultimate outcome.

. Although Grigoryan devotes a significant portion of her brief to arguing that her untimely asylum application should have been excused because of extraordinary circumstances, we lack jurisdiction over this issue. See INA § 208(a)(3) [8 U.S.C. § 1158(a)(3)]; Sukwanputra v. Gonzales, 434 F.3d 627, 632-33 (3d Cir.2006). But, as the Government concedes, Grigoryan’s failure to challenge the adverse credibility determination on appeal to the BIA was exhausted because the BIA addressed the issue sua sponte. See Lin v. Att'y Gen., 543 F.3d 114, 123-24 (3d Cir.2008).

. Because Grigoryan’s asylum application was filed after the effective date of the REAL ID Act (May 11, 2005), the IJ was allowed to make a credibility determination "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim----” INA § 208(b)(1 )(B)(iii) [8 U.S.C. § 1158(b)(l)(B)(iii) ]. We conclude that the erroneous adverse credibility determinations described below cannot survive even under the new standard.

. The IJ also faulted Grigoryan for failing to provide "any evidence that she is a member of, or affiliated with, the Baptist Church,” such as a baptismal certificate, a letter from the minister who performed her baptism in Armenia, or statements from other church members in Armenia or Philadelphia. IJ Oral Decision, 23-26. In denying relief based on a lack of corroboration, the IJ must conduct the following three-part inquiry: (1) an identification of facts for which it is reasonable to expect corroboration; (2) an inquiry as to whether the applicant has provided information corroborating the relevant facts; and, if he has not, (3) an analysis of whether the applicant has adequately explained his failure to do so. See Toure v. Att’y Gen., 443 F.3d 310, 323 (3d Cir.2006). Grigoryan explained that baptismal certificates are not issued in Armenia, that she "didn't know that I need papers to prove that I am part of a religion," and that it was difficult to obtain evidence from the Russian Baptist Church in Philadelphia because she does not speak Russian fluently and had difficulty finding transportation to the church. A.R. 228-29, 231, 233. Even if these explanations are inadequate, however, the IJ failed to address other evidence corroborating Grigoryan's Baptist faith. For instance, statements submitted by two family friends, her parents, and her sister, all indicate that Grigoryan is a Baptist. Id. at 267, 269, 275, 279. We recognize that the IJ does not have "to write an exegesis on every contention” raised by the movant, see Sevoian v. Ashcroft, 290 F.3d 166, 178 (3d Cir.2002), but remand may be required when the record suggests that the IJ failed to take into account significant evidence. See Zheng v. Att’y Gen., 549 F.3d 260, 269 (3d Cir.2008); see also Cham v. Att’y Gen., 445 F.3d 683, 693 (3d Cir.2006) (recognizing that an IJ must "actually consider” the evidence presented by a party).

. The IJ also questioned "how a stranger would know that this woman walking down the street was a Baptist.” IJ Oral Decision, 24. But, contrary to the IJ's finding that Grigoryan "did not say that she went out to discuss God with people,” id. at 25, she testified that "I did talk to my classmates and people that I knew in school about [baptism].” A.R. 238.

. On remand, the Board should separately consider whether Grigoryan established a prima facie claim for relief under the CAT. See Zubeda v. Ashcroft, 333 F.3d 463, 467, 476 (3d Cir.2003).