**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2579
_____

QING CHEN,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A095-457-371)
Immigration Judge:  Honorable Walter A. Durling
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 18, 2011
Before:  RENDELL, JORDAN and VAN ANTWERPEN, Circuit Judges

(Opinion filed : May 19, 2011 )
_____

OPINION
_____

PER CURIAM

        Qing Chen petitions for review of a Board of Immigration Appeals ("BIA")

decision denying her motion to reopen her immigration proceedings.  For the reasons that

follow, we will deny the petition.

Chen is a native and citizen of the People's Republic of China who entered the United States in 2002 using a fraudulent passport. She was placed in removal proceedings and applied for asylum and related relief, claiming that she had been persecuted because of her grandparents' practice of Falun Gong. The Immigration Judge ("IJ") found Chen's testimony incredible and denied relief. Chen appealed to the Board of Immigration Appeals ("BIA"), but her appeal was dismissed in 2004 because she failed to file a brief.

More than five years later, in late 2009, Chen filed a motion to reopen the proceedings. She claimed that her personal circumstances had changed in that she had recently joined the Federation for a Democratic China ("FDC") in the United States. She described the group as opposing the present government of China and as focused on promoting democracy. She claimed that she had participated in the FDC in a variety of ways, including attending meetings and demonstrations, distributing literature, and authoring articles published on the internet. Chen feared that she would be persecuted for her political activities if she returned to China. Chen also claimed that conditions in China had changed since she had been denied asylum in that the government does not tolerate any dissent, members of political parties like the FDC are persecuted, "internet dissidents" are pursued, and the overall situation for freedom and human rights had worsened.

The BIA denied the motion, concluding that it was untimely and that Chen had not shown that any exception to the time limitation applied. The BIA found that Chen's

membership in the FDC was a change in personal circumstances, rather than in country conditions, and that her evidence regarding political dissent did not constitute changed country conditions. The BIA also declined to sua sponte reopen the proceedings.

We have jurisdiction under 8 U.S.C. § 1252 to review the order denying Chen's motion to reopen. A motion to reopen "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." See 8 C.F.R. § 1003.2(c)(2). Chen filed her motion years after the BIA issued its final decision, and she does not contest its untimeliness. Instead, she sought to proceed under the exception for motions based on "changed country conditions arising in the country of nationality . . . if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii).

We review the BIA's denial of Chen's motion to reopen for an abuse of discretion and may reverse only if it is "arbitrary, irrational, or contrary to law." Shardar v. Att'y Gen., 503 F.3d 308, 311 (3d Cir. 2007). We will uphold the BIA's factual determinations if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (citation omitted). We may reject those determinations only if the petitioner's evidence is such that "a reasonable factfinder would have to conclude" to the contrary." Id.

Chen presented much material in support of her motion, including her FDC membership card, photos of her engaging in FDC events, articles she wrote criticizing the

3

Chinese government, affidavits regarding her membership in the FDC and the treatment of political dissidents in China, two articles reporting the arrests or detainment of China Democracy Party members upon their return to China, and U.S. Department of State reports. The BIA, however, determined that Chen's motion "[did] not meaningfully or adequately identify how this evidence reflects 'changed' conditions in China regarding the treatment of political dissidents, political organizations, or others similarly situated to the respondent since the respondent's hearing in 2003." Joint Appendix ("JA") at 3. The BIA further found that Chen's evidence regarding the censorship and control of political dissent on the internet did not reflect "any new prohibition on pro-democracy activity, but rather . . . an effort by authorities to address another method of transmitting barred material." Id.

Chen argues that the BIA abused its discretion in determining that her evidence did not show changed country conditions because the Board (1) did not "explicitly consider" all of the evidence she submitted, and (2) "misevaluated" other evidence which shows that conditions have worsened for political dissidents since 2003. Pet. Br. At 9, 6. We disagree. First, the BIA is not required to "expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner." Zheng v. Att'y Gen., 549 F.3d 260, 268 (3d Cir. 2008) (citation omitted). Rather, the BIA may express its consideration of the evidence in a "summary fashion," so long as a reviewing court is "able to discern its reasons for declining to afford relief." Id. In this case, the Board's decision refers to the voluminous materials submitted by Chen and then pinpoints the

4

salient issues: that Chen's membership in the FDC is a change in personal circumstances, that her evidence did not show that the treatment of political dissidents has changed since 2003, and that the censorship of dissident activity on the internet reflects a continuation of the Chinese government's repression of political dissent. Thus, the BIA's reasons for denying relief can be discerned and the Board did not abuse its discretion by failing to expressly discuss each piece of evidence Chen offered.

Moreover, the BIA's determination that Chen failed to show changed country conditions is supported by substantial evidence in the record. Although Chen asserts that her evidence shows a "new crack down in China on political dissent, as well as . . . a new trend of arrests and sentences for dissidents who publish anti-[government] articles and propaganda on the Internet," Pet. Br. At 10, the Board in essence found that the government's repression of political dissent remained constant. Chen points to two news articles that detail the arrest of political dissidents who returned to China as evidence that the Chinese government has recently begun targeting such individuals. However, one of the dissidents was arrested in 2002, JA at 108, well before Chen's hearing. So this does not support her claim that there is a "new trend of arrests" for dissidents since 2003. Chen also relies on State Department reports to try to demonstrate that conditions have worsened since 2003, citing a 2005 report indicating "increased harassment, detention, and imprisonment" of those perceived to threaten government authority, a 2007 profile indicating that "persons who participate in high-profile pro-democracy activities in the

5

United States still run the risk of arrest and imprisonment should they return to China,"[1] and a 2008 report indicating "increased" censorship and manipulation of the press and internet "during major events." JA at 114, 174, 121.

But the record also reflects that the Chinese government has harshly repressed political dissent for decades. See, e.g., JA at 171-74 (describing political events from the 1950s onward that provoked a governmental response, including, most recently, the 1989 Tiananmen Square massacre and the 1999 crackdown on the China Democracy Party). Similarly, the record reflects that the Chinese government has attempted to control and censor the internet, and to arrest those who disseminate dissident materials via the internet, since at least 2002. JA at 359-60. In light of this record, the BIA did not abuse its discretion in concluding that Chen had not provided evidence of changed country conditions in the form of a new crackdown on political dissent in general, or specifically on those who make their ant-government views public via the internet. Rather, there is substantial evidence in the record that supports the BIA's determination that the Chinese Government's efforts to control activism via the internet is merely part of its ongoing history of suppressing dissent and controlling the dissemination of barred ideas and material.[2]

---

[1] Chen omitted the portion of the report that noted that some activists had returned to China "with no apparent problems." JA at 174.

[2] Even if Chen had made the threshold showing required to reopen the proceedings, we are not persuaded by her arguments on appeal that the evidence she submitted to the BIA demonstrates a reasonable likelihood that she is prima facie eligible for asylum based on

Accordingly, we will deny the petition for review.

---

a fear of being arrested for her political opinion.  <u>See</u> <u>Kibinda v. Att'y Gen.</u>, 477 F.3d 113, 119 (3d Cir. 2007) ("We [have] made clear that persecution refers only to severe conduct and does not encompass all treatment our society regards as unfair, unjust or even unlawful or unconstitutional.") (citation and internal quotation marks omitted).