**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2041
_____

HERRY PANGKEY,
                                        Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A070-576-067)
Immigration Judge:  William Strasser
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 4, 2012

Before: FUENTES, HARDIMAN and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  December 5, 2012)
_____

OPINION
_____

PER CURIAM

        Herry Pangkey ("Pangkey") petitions for review of the Board of Immigration

Appeals' final order of removal.  For the reasons that follow, we will deny the petition for

review.

1

Pangkey, a native and citizen of Indonesia, entered the United States on or about February 25, 1990 as a nonimmigrant visitor, and overstayed. On December 16, 1993, the Immigration & Naturalization Service served him with an Order to Show Cause, which charged that he was deportable under former Immigration & Nationality Act § 241(a)(1)(B), as an alien who remained in the U.S. for a time longer than permitted. In 1994, Pangkey applied for asylum, claiming a fear of persecution on account of his Seventh Day Adventist religious beliefs. Among other things, Pangkey asserted that in Indonesia Saturday is an official work day, but he must observe the Sabbath on Saturday. Prior to his November 28, 1994 merits hearing, Pangkey conceded deportability. Following the hearing, the Immigration Judge denied relief. Pangkey was granted voluntary departure and in the alternative he was ordered removed to Indonesia. On June 8, 1995, the Board of Immigration Appeals dismissed his appeal. Pangkey did not petition for review of the Board's decision and did not voluntarily depart, nor did the federal immigration authorities ever execute the deportation order.

On April 28, 2011, nearly sixteen years after the Board's final order of removal, Pangkey filed a motion to reopen with the Board, and an asylum application, in which he argued that the untimeliness of his motion should be excused on the basis of changed country conditions in Indonesia. He claimed to have a well-founded fear of persecution due to an alleged increase in the persecution of Christians in Indonesia by Muslim extremists, and in support of this claim, he submitted the 2009 and 2010 State Department International Religious Freedom Reports for Indonesia; the 2009 State Department Human Rights Report for Indonesia; a 2011 Human Rights Watch Report; a

2

Reuters article from 2011 describing attacks against Christian churches; internet news articles dated 2010 from *AsiaNews* and from www.persecution.org describing attacks against Christian churches; his own affidavit in which he stated that mistreatment of Indonesian Christians by Muslim extremists had increased significantly since the Board dismissed his case in 1995; and a letter from his Edison, New Jersey pastor. Pangkey also argued that the Board should exercise its *sua sponte* authority to reopen proceedings because the agency had previously failed to do a "disfavored group" analysis in evaluating his asylum claim, citing Tampubolon v. Holder, 610 F.3d 1056 (9th Cir. 2010) (applying "disfavored group" analysis to applications for withholding of removal by Christians, whether of Chinese descent or not).

The Department of Homeland Security opposed Pangkey's motion to reopen, arguing, among other things, that his evidence demonstrated improved and not worsened conditions. The Government specifically noted the 2010 International Religious Freedom Report, which stated that: the Indonesian Constitution provides for freedom of religion and accords all Christians the right to worship according to their own religion and beliefs; Indonesian law does not discriminate against any recognized religious group in employment, housing, or health care; the government observes several Christian religious holidays; there were numerous areas of improvements in religious freedom during the reported period; Muslim and Christian leaders were strongly committed to easing religious tension; the police protected churches and prayer houses during services; and Christian and Muslim communities continued to hold joint events.

3

On March 19, 2012, the Board denied Pangkey's motion to reopen in a short written decision. The Board found that Pangkey failed to show how his country conditions evidence established materially changed conditions in Indonesia. Alternatively, the Board held that Pangkey's evidence would not likely change the result in his case if proceedings were to be reopened, citing Matter of Coelho, 20 I. & N. Dec. 464, 472-73 (BIA 1992). The Board also declined to exercise its *sua sponte* authority to reopen proceedings, noting that we have not adopted the Ninth Circuit Court of Appeals' "disfavored group" analysis and citing Wong v. Att'y Gen. of the U.S., 539 F.3d 225, 235 n.5 (3d Cir. 2008).

Pangkey has timely petitioned for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). In his brief, Pangkey argues that the Board abused its discretion and violated due process by failing to meaningfully consider and discuss his country conditions evidence and by failing to articulate a reason for the decision, and the Board abused its discretion and violated due process by failing to consider how his country conditions evidence established that Indonesian Christians are a "disfavored group" subject to violence and discrimination by Islamic extremists that the Indonesian government is unable or unwilling to control.

We will deny the petition for review. The Board's denial of a motion to reopen is reviewed for an abuse of discretion. Immigration & Naturalization Serv. v. Abudu, 485 U.S. 94, 105 (1988). Under this standard, we will not disturb the Board's decision unless it is arbitrary, irrational, or contrary to the law. See Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004). We uphold the Board's factual determinations underlying the denial of

4

the motion to reopen if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Zheng v. Att'y Gen. of the U.S., 549 F.3d 260, 266 (3d Cir. 2008) (quoting Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). A party may file only one motion to reopen and such motion must be filed no later than 90 days after the date of the removal order. 8 C.F.R. § 1003.2(c)(2); 8 U.S.C. § 1229a(c)(7)(C)(i). Pangkey's motion to reopen, filed almost sixteen years after the Board's June 8, 1995 decision, was untimely and thus was properly denied on that basis.

The 90-day time limitation does not apply if the alien seeks reopening "based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." Id. at § 1003.2(c)(3)(ii). See also 8 U.S.C. § 1229a(c)(7)(C)(ii). Under the standards we set forth in Zheng, 549 F.3d 260, the Board must explicitly consider any country conditions evidence that materially bears on an applicant's claim, see id. at 268. Pangkey argues that the Board failed to explicitly consider his country conditions evidence and did not provide a meaningful explanation of its decision, as required by Zheng. See Petitioner's Brief, at 19-22.

We agree that the Board said little in rejecting Pangkey's motion to reopen, but the Board specifically identified Pangkey's submission of news articles and reports issued by the State Department and a non-governmental organization. Moreover, the Board had before it for consideration the Department of Homeland Security's response to Pangkey's

5

motion to reopen. This response discussed in detail the 2010 State Department International Religious Freedom Report, which did *not* support Pangkey's argument that conditions for Christians had recently worsened and that the government of Indonesia fails to protect Christian churches and religious services. Accordingly, the Board had a basis in the motion and response for determining that Pangkey's evidence was inconclusive, and that he did not meet his burden to show worsened country conditions. We have held that the Board need not write a summary of every document submitted so long as its decision provides us with adequate insight into its reasoning, see Wong, 539 F.3d at 231, and, in Pangkey's case, we conclude that the Board did just enough.

We note that Pangkey's discussion of his country conditions evidence, including his 2010 and 2011 news articles which note attempts by extremists to attack churches and religious facilities, was reasonably thorough to the extent the evidence was favorable to him, A.R. 24-28. His motion, however, omitted any discussion of the significant events that have occurred in Indonesia with respect to its Muslim and Christian populations from the time of his removal hearing in 1994, see, e.g., Lie v. Ashcroft, 396 F.3d 530, 532-33 (3d Cir. 2005) (noting the May 1998 riots which led to the deaths of over one thousand people and "represented a period of significant violence and rioting against individuals of Chinese origin throughout Indonesia"), until just prior to 2010, see, e.g., Wong, 539 F.3d at 233 (noting that, according to the 2004 State Department Country Report, discrimination and harassment had declined compared with previous years and steps had been taken by the Indonesian government to promote religious, racial, and ethnic tolerance and to reduce interreligious violence). A more complete discussion of events

6

that have transpired in Indonesia since Pangkey's hearing in 1994 would have demonstrated, as the Department of Homeland Security argued, that circumstances in Indonesia have improved and not worsened.

We conclude that the Board's succinct decision that Pangkey failed to show how his country conditions evidence established materially changed conditions in Indonesia since his removal hearing provided Pangkey the process he was due. He has identified no overlooked exhibit that would have changed the result. We are confident that the Board fully reviewed his claim, and that the denial of reopening occurred only after the Board fully considered his arguments and evidence, and the Department of Homeland Security's rebuttal. Accordingly, we conclude that the Board did not abuse its discretion in determining that Pangkey did not qualify for the changed country conditions exception to the time requirement for filing a motion to reopen, see Abudu, 485 U.S. at 105; Guo, 386 F.3d at 562.[1]

Last, although the Board has the authority to reopen proceedings *sua sponte*, see 8 C.F.R. § 1003.23(a), its decision not to exercise its discretion, where, as here, it did not rely on an incorrect legal premise, is unreviewable. See Calle-Vujiles v. Ashcroft, 320 F.3d 472, 475 (3d Cir. 2003). See also Pllumi v. Att'y Gen. of the U.S., 642 F.3d 155, 160 (3d Cir. 2011). The Board's decision declining to follow Ninth Circuit precedent in a case arising in our circuit was not based on an incorrect legal premise, see Wong, 539

---

[1] Because we conclude that Pangkey's motion to reopen was untimely filed, we need not address the Board's alternative determination that Pangkey's evidence would not in any event change the result of the proceedings if they were reopened.

F.3d at 235 n.5 (noting that we previously rejected the "disfavored group analysis" in *Lie*).

For the foregoing reasons, we will deny the petition for review.