**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 11-3048 and 11-4357
_____

MIKHAIL BULATOV,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES;
SECRETARY US DEPARTMENT OF HOMELAND SECURITY;
JOHN MORTON, as Assistant Secretary for Immigration
and Customs Enforcement;
GARY MEAD, as Executive Associate Director,
Enforcement and Removal Operations;
JOHN TSOUKARIS, as Acting Director, Enforcement and Removal
Operations, Newark, New Jersey Field Office,

Respondents

_____

On Petition for Review from Orders of the
Board of Immigration Appeals
(BIA-1: A098-167-763)
Immigration Judge: Hon. Mirlande Tadal
_____

Argued April 18, 2013

BEFORE: AMBRO, HARDIMAN and COWEN, Circuit Judges

(Filed: May 1, 2013)

Lawrence G. Spivak, Esq. (Argued)
1st Floor
87-40 165th Street
Jamaica, NY 11432

      Counsel for Petitioner

Shelley Goad, Esq.
Eric H. Holder, Jr., Esq.
Thomas W. Hussey, Esq.
Andrew J. Oliveira, Esq.
Julia J. Tyler, Esq. (Argued)
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

      Counsel for Respondents

_____

OPINION
_____

COWEN, <u>Circuit Judge</u>.

Mikhail Bulatov petitions for review of a decision of the Board of Immigration

Appeals ("BIA"), which, in turn, dismissed his appeal from the decision of the

Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and

relief under the Convention Against Torture ("CAT"). He also petitions for review of the

BIA's decision denying his subsequent motion to reopen. We will deny both petitions.

I.

Born in the then-Soviet Republic of Kazakhstan, Bulatov is a citizen of both Kazakhstan and Russia. It appears that he was arrested in Kazakhstan in November 1998 and then detained until April 1999. On May 19, 2003, Bulatov entered the United States. Nine months later, his wife, Nadezhda Bulatova, submitted an I-485 application for adjustment of status to that of an alien lawfully admitted for permanent residence under 8 U.S.C. § 1255. Bulatov simultaneously filed for adjustment of status as her spouse, and he was interviewed about his application on March 20, 2009.

Bulatov then agreed to plead guilty to "a one count information, which charges him with making materially false, fictitious and fraudulent statements and representations, in violation of 18 U.S.C. § 1001." (AR1602.) The information specifically alleged that, on or about March 20, 2009, Bulatov,

> in a matter within the jurisdiction of the executive branch of the government of the United States, namely, the U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation by misrepresenting, in connection with a Form I-485 (Adjustment of Status Application which he had submitted in support of changing his immigration status), that he had never been arrested, cited, charged, indicted, fined, or imprisoned in Kazakhstan for breaking or violating any law or ordinance.

(AR1595.) The United States District Court for the District of New Jersey accepted his guilty plea, and Bulatov was sentenced to serve five months' imprisonment and a three-year term of supervised release.

Charged as removable, Bulatov filed an application for asylum, withholding of removal, and CAT protection on July 15, 2010. Specifically, he alleged past persecution

3

as well as a well-founded fear of future persecution on account of his Jewish ethnicity or nationality (in both Kazakhstan and Russia) and his political opinion (in Kazakhstan). The IJ denied his claims for relief in a thirty-four page written decision, and the BIA dismissed his appeal. Bulatov filed a motion to reopen, but this motion was denied by the BIA.

## II.

Initially, Bulatov challenges, largely on due process grounds, the admission of certain documentation regarding Kazakhstan's attempt to extradite him on purported murder charges.[1] In addition to a so-called "Extradition Notice & Verdict" (which was accorded limited weight by the IJ) and the "Request from Republic of Kazakhstan," the government presented an INTERPOL "Red Notice" published on June 17, 2004, which, inter alia, identified Bulatov as a possibly dangerous fugitive wanted for prosecution by Kazakhstan. It also stated that he was charged with multiple murders and that an arrest warrant was issued on March 24, 2004. We agree with the government that, at the very least, the admission of these documents did not prejudice Bulatov. Cf., e.g., Wilson v.

---

[1] This Court generally has subject matter jurisdiction pursuant to 8 U.S.C. § 1252. In turn, we review the decision of the BIA as well as the IJ's underlying decision to the extent that it is adopted by the BIA. The agency's factual determinations are reviewed under the deferential "substantial evidence" standard. See, e.g., Yuan v. Attorney General, 642 F.3d 420, 425 (3d Cir. 2011). "The administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). The BIA's denial of a motion to reopen is reviewed for an abuse of discretion, Zheng v. Attorney General, 549 F.3d 260, 264-65 (3d Cir. 2008), and it should be upheld if "'supported by reasonable, substantial, and probative evidence on the record considered as a whole,'" id. at 266 (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)).

Ashcroft, 350 F.3d 377, 381 (3d Cir. 2003) (stating that "there would be no due process violation in the absence of prejudice"). While he has attacked the veracity of the murder allegations against him, it appears that he has never really contested that the Kazakh government seeks his extradition. On the contrary, he has relied on this supposedly inadmissible documentation as support for a number of his own contentions, such as his assertion that the one-year time bar for asylum applications should not apply because "the false charges transmitted by the Kazakhstan government to the U.S. government constitute a changed circumstance." (Petitioner's Brief at 19.) The IJ likewise did not rely on these documents as support for her critical adverse credibility determination. We further note that the government provided to the IJ a detailed description of how these documents were obtained (e.g., the Department of Homeland Security obtained the Red Notice from the United States Attorney's office, which had obtained the document from INTERPOL itself and retained the original copy). See, e.g., Liu v. Ashcroft, 372 F.3d 529, 533 (3d Cir. 2004) ("We conclude that 8 C.F.R. § 287.6 is not an absolute rule of exclusion, and is not the exclusive means of authenticating records before an immigration judge."). Thus, we reject Bulatov's argument that the IJ's admission of this documentation was improper based on a lack of authenticity.

With respect to his otherwise untimely asylum application, the BIA specifically concluded that "only the applications for withholding of removal and CAT protection remain at issue" because, inter alia, Bulatov "has not shown the existence of changed circumstances in Kazakhstan materially affecting his eligibility for asylum since he

5

arrived in the United States." (JA6 (citation omitted).)  It is undisputed that, under our existing precedent, we lack the jurisdiction "to review a decision regarding whether an alien established changed or extraordinary circumstances that would excuse his untimely filing [for asylum]."  Sukwanputra v. Gonzales, 434 F.3d 627, 635 (3d Cir. 2006) (citations omitted).  We reject Bulatov's request that we revisit this precedent and will therefore not consider his untimely application for asylum.

The IJ, after conducting an extensive analysis, determined that Bulatov "is not a credible witness."  (JA32.)  As the BIA observed, the IJ "concluded that the respondent's provision of false information to procure an immigration benefit impugns his credibility in this proceeding."  (JA6 (citations omitted).)  The IJ appropriately considered Bulatov's guilty plea and conviction for making a materially false, fictitious, and fraudulent statement and representation in violation of § 1001, together with his proffered explanation for why he did not disclose his prior arrest and why he pled guilty.  We also observe that a guilty plea and conviction for a crime involving dishonesty—especially when committed in connection with an earlier attempt to obtain an immigration benefit— arguably may be relevant to the threshold inquiry of whether or not the individual is credible in his or her subsequent effort to obtain other kinds of immigration relief.  The BIA also noted that the IJ "further identified several discrepancies and omissions in the respondent's oral and written submissions."  (JA7 (citation omitted).)  For example, she identified a discrepancy regarding when Bulatov first met Saleh (where Bulatov's own problems purportedly intensified after he leased a warehouse to Saleh and where, in any

case, the administrative trier of fact may make a credibility determination "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim," 8 U.S.C. § 1158(b)(1)(B)(iii)).  The IJ also listed the number of times that he entered United States and then returned to either Kazakhstan or Russia on his own volition (i.e., thirteen times between December 1995 and December 2002).  A reasonable finder of fact could conclude that this extensive history of leaving—and then returning to—Kazakhstan and Russia cast severe doubts on the veracity of his account of serious mistreatment dating back to the early 1990s.  We also note that at least one of these trips occurred after Bulatov's detention in Kazakhstan, notwithstanding the brutal conditions and torture he claimed he suffered while incarcerated.  In the end, the adverse credibility determination made against Bulatov was supported by specific and cogent reasoning as well as substantial evidence in the record.  See, e.g., Abdulrahman v. Ashcroft, 330 F.3d 587, 597 (3d Cir. 2003).  We thus cannot conclude that "the record evidence would '*compel*' (emphasis in original) a reasonable factfinder to make a contrary determination."  Id. (quoting Elias-Zacarias, 502 U.S. at 481 n.1).

Given this credibility determination, the Court need not—and does not—consider either the alternative corroboration ruling or the IJ's alternate burden of proof determination that Bulatov failed to satisfy the "'on account of' a protected ground" requirement for withholding of removal (JA36 (citations omitted)).  See, e.g., Toure v. Attorney General, 443 F.3d 310, 323 (3d Cir. 2008) ("As we recently made clear in Chen v. Gonzales, corroboration and credibility, although intuitively related, are distinct

7

concepts that should be analyzed independently. 434 F.3d 212, 221 (3d Cir. 2005)."); Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir. 2003) (en banc) ("An alien's credibility, by itself, may satisfy his burden or doom his claim." (citing Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002))). The agency's determination that Bulatov failed to establish a "pattern or practice" of anti-Semitic persecution in Russia or Kazakhstan also was supported by substantial evidence in the record. For instance, the IJ properly turned to the State Department's own reports (which stated, inter alia, that the number of anti-Semitic attacks in Russia had decreased and indicated that Kazakhstan is a multiethnic society with a long tradition of tolerance and secularism). See, e.g., Ambartsoumian v. Ashcroft, 388 F.3d 85, 89 (3d Cir. 2004) (recognizing our precedent that "State department reports may constitute 'substantial evidence' for the purposes of reviewing immigration decisions" (citations omitted)). The IJ also appropriately considered—and then gave little weight to—Dr. Brian Williams's proffered account of pervasive anti-Semitism in Kazakhstan as anecdotal and unsupported by documentation.

Furthermore, the agency appropriately disposed of Bulatov's claim for CAT relief. The BIA and the IJ properly focused on Kazakhstan because Bulatov evidently would be extradited from Russia to Kazakhstan pursuant to the outstanding INTERPOL warrant (e.g., "100 percent automatic" according to Dr. Williams (AR502)). Bulatov contends that he "seeks CAT relief because he had proof that the Kazakh and Russian authorities will threaten to or actually inflict severe physical and mental suffering upon him for refusing to turn over his businesses and for failing to disclose the location of the

8

treasure." (Petitioner's Brief at 51.)  However, his theory of lost Tsarist treasures ultimately was based on the same factual account that the IJ rejected on credibility grounds.  The agency also took into consideration the other evidence in the record, including evidence of the frankly deplorable prison conditions in Kazakhstan.  Pursuant to our deferential standard of review, the agency appropriately determined that Bulatov failed to establish that "the government maintains these conditions with the specific intent of torturing inmates" or that "he would be singled out for torture in the future" (JA8 (citations omitted)).  See, e.g., Pierre v. Attorney General, 528 F.3d 180, 190 (3d Cir. 2008) (en banc) ("In our view, a petitioner cannot obtain relief under the CAT unless he can show that his prospective torturer will have the goal or purpose of inflicting severe pain or suffering." (footnote omitted)).

Finally, we must address the BIA's denial of the motion to reopen.  This motion was based on two basic grounds:  (1) additional evidence in support of his claims for relief, especially a declaration and attached documentation ostensibly from Dr. Aliyev (a former high-ranking Kazakh official and son-in-law of Kazakh President Nazarbayev); and (2) a claim that his prior counsel provided ineffective assistance with respect to the issue of corroboration.  We conclude that the BIA did not abuse its discretion by denying Bulatov's motion.  Among other things, Dr. Aliyev acknowledged that "I do not know Mr. Bulatov personally" (AR66), stated that he thereby "reviewed [Bulatov's] written statement in support of his application and the documents about him transmitted by the Kazakh secret service to INTERPOL" (AR72), and discussed Bulatov's own version of

9

events based on his understanding of how the Kazakh regime works. As the government points out, Dr. Aliyev's declaration was "based on the author's uncritical review of the same narrative that the agency found not credible." (Respondent's Brief at 56 (citation omitted).) We also agree with the government that Dr. Aliyev—a former high-ranking official who opposed official corruption and Kazakhstan's President (his own former father-in-law)—was not similarly situated to Bulatov. Likewise, the BIA properly rejected the ineffectiveness claim because "the [IJ] found the respondent was not credible based on inconsistencies in the respondent's own testimony and a false statement made in his application for adjustment of status." (JA49 (citation omitted).) Under the circumstances, Bulatov's "failure to meet his burden of proof with sufficient corroborative evidence constituted a separate, additional reason for denial under the REAL ID Act." (Id. (citations omitted).)

## III.

For the foregoing reasons, we will deny Bulatov's petitions for review.