**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1536
_____

XI QUE LI,
                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                    Respondent
_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(Agency No. A076-506-646)
Immigration Judge: Donald V. Ferlise

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 12, 2015

Before:  McKEE, *Chief Judge*, HARDIMAN and SCIRICA, *Circuit Judges*.

(Opinion filed: August 6, 2015)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

McKEE, *Chief Judge*.

Petitioner Xi Que Li filed a petition for review of the February 10, 2014 decision of the Board of Immigration Appeals ("BIA" or "Board") denying her motion to reopen. For the reasons that follow, we will vacate the Board's decision and remand for proceedings consistent with this decision.

**I.**

Li is a native of China who entered the United States without proper documentation in August of 2000. After being placed in removal proceedings, Li filed an application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Li's initial application was based on her claim that she was forced to undergo an abortion in accordance with China's family planning policy. Immigration Judge Donald V. Ferlise denied the application and ordered her removal. The BIA affirmed the IJ's decision. In 2007, Li filed a motion to reopen proceedings based on changed country conditions, based on China's family planning policy, which was denied by the BIA. Li petitioned this Court for review, and we granted the petition and remanded it to the BIA for further proceedings. The BIA ultimately denied that motion.

On November 8, 2013, Li filed a second motion to reopen proceedings. This motion was also based on a claim of changed country conditions, but it rested on Li's conversion to Christianity and the alleged intensification of China's persecution of Christians. The BIA denied the motion on February 10, 2014, declaring it untimely and finding that Li failed to make a prima facie showing of eligibility for at least some types of the relief she sought. Li again petitioned this Court for review.

2

## II.[1]

Though a motion to reopen must generally be filed with the BIA no later than 90 days after the entry of the final administrative decision, 8 U.S.C. § 1229a(c)(7)(C)(i), this deadline does not apply to motions based on "changed country conditions arising in the country of nationality . . . if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." *Id.* § 1229a(c)(7)(C)(ii); *see also Zheng v. Att'y Gen.*, 549 F.3d 260, 265 (3d Cir. 2008). However, even if the petitioner overcomes this "threshold" issue of demonstrating timeliness by presenting sufficient evidence of changed country circumstances, the BIA may still deny the motion to reopen if the movant fails to establish a prima facie case for the relief sought. *Shardar v. Att'y Gen.*, 503 F.3d 308, 312 (3d Cir. 2007). "[T]he prima facie case standard for a motion to reopen . . . requires the applicant to produce objective evidence showing a 'reasonable likelihood' that he can establish [that he is entitled to relief]." *Guo v. Ashcroft*, 386 F.3d 556, 563 (3d Cir. 2004) (ellipsis and second alteration in original) (quoting *Sevoian v. Ashcroft*, 290 F.3d 166, 175 (3d Cir. 2002)).

We review the denial of a motion to reopen for abuse of discretion. *Pllumi v. Att'y Gen.*, 642 F.3d 155, 158 (3d Cir. 2011). The BIA abuses its discretion if it acts in a manner that is "arbitrary, irrational, or contrary to law." *Filja v. Gonzales*, 447 F.3d 241, 251 (3d Cir. 2006) (quoting *Sevoian*, 290 F.3d at 174) (internal quotation marks omitted). Though our standard of review is a deferential one, we must be satisfied that the Board

---

[1] The BIA had jurisdiction to review Li's motion to reopen under 8 C.F.R. § 1003.2, and we have jurisdiction to review the BIA's decision pursuant to 8 U.S.C. § 1252.

has "followed proper procedures and considered and appraised the material evidence before it." *Sevoian*, 290 F.3d at 177 (quoting *Tipu v. INS*, 20 F.3d 580, 583 (3d Cir. 1994)).

The BIA must "meaningfully consider[]" the evidence and arguments presented by the alien in considering the motion. *Zhu v. Att'y Gen.*, 744 F.3d 268, 272 (3d Cir. 2014). "To fulfill this requirement, the BIA must provide an indication that it considered such evidence, and if the evidence is rejected, an explanation as to why it was rejected." *Id.* "This does not mean that the BIA is required to expressly parse each point or discuss each piece of evidence presented, but 'it may not ignore evidence favorable to the alien.'" *Id.* (internal citation omitted) (quoting *Huang v. Att'y Gen.*, 620 F.3d 372, 388 (3d Cir. 2010)). Thus, when dismissing the petitioner's evidence, "the BIA should provide us with more than cursory, summary or conclusory statements, so that we are able to discern its reasons for declining to afford relief to a petitioner." *Zheng*, 549 F.3d at 268 (citation omitted).

### III.

The BIA declared Li's motion untimely because it found "that the evidence regarding past and current conditions faced by Christians in China is not sufficient to demonstrate a material change since the time of the respondent's hearing in 2004." (J.A. 4.) The Board's explanation for this finding was that "[t]he evidence reflects that China continues to allow the practice of Christianity, although there have been reports of the detention of some leaders of underground, or 'house,' churches and harassment of church members." (*Id.*) It then listed a string of citations to sections of the U.S. government

4

reports and publications proffered by Li, noting that it "ha[s] found that U.S. State Department reports on country conditions are highly probative evidence and are usually the best source of information on conditions in foreign nations." (*Id.*) This explanation, which does nothing to actually *explain* the Board's reasoning, is the type of "conclusory" analysis that makes it difficult for us to review the Board's decision. *See Zheng*, 549 F.3d at 268.

For example, after reviewing the BIA's opinion, we are able to identify the evidence the BIA relied upon in arriving at its conclusion, but we cannot discern why it credited that evidence and why it apparently failed to credit other sources. The Board's only explanation was a general statement that it has repeatedly noted that U.S. State Department reports are "usually the best" evidence when considering whether to grant a motion to reopen based on changed country conditions. (J.A. 4.) However, the Board did not explain why it only cited to eight U.S. governmental reports, half of which were not produced by the State Department, to support its conclusion in this case. (J.A. 59-62.) *See Shardar*, 503 F.3d at 316 (noting that, because the Board did not provide "any explanation for *why* [the petitioner] failed to overcome the 'temporal limitations' in the regulations given the evidence he presented, the Board's conclusory handling of this issue [in that case] was an abuse of discretion").[2] Though the BIA may analyze the

---

[2] The BIA also notes that Li failed to attach certain pieces of evidence on which she relied in her motion, including reports describing conditions during the time period when Li initially sought asylum in 2004. Though the Government argues that Li's failure to attach these documents prevented Li from making a showing regarding the country conditions in 2004, the Board itself did not articulate this reasoning or otherwise explain how—or if—the omission of the documents was relevant to its decision.

record in a "summary" fashion without citing to each piece of evidence, the opinion as a whole must demonstrate "that the BIA reviewed the record and . . . why the record supports its conclusion." *Khan v. Att'y Gen.*, 691 F.3d 488, 499 (3d Cir. 2012). The opinion here does not satisfy either requirement.

Perhaps most critically, in addition to failing to explain why it credited certain evidence, the BIA neglected to explain why it chose not to credit the evidence that was favorable to Li. *See Zhu*, 744 F.3d at 272 (requiring an explanation as to why rejected evidence was rejected). Indeed, the Board did not even mention the three lengthy NGO reports, five sources reporting on persecution or harassment in Li's native Fujian Province, sixteen news articles, or various other pieces of evidence that Li attached to her motion. Some of this evidence arguably supported Li's claim that persecution and harassment of Christians practicing in "house churches" had significantly worsened since 2004. For example, the ChinaAid 2011 Annual Report claimed that "the overall situation of persecution [of Christians] can be statistically represented as being 42.5% worse than in 2010, 63.7% worse than in 2009, 95% worse than in 2008, 261% worse than in 2007 and 318.1% worse than in 2006." (J.A. 253.) Similarly, a New York Times article explains that, "[a]fter years of tolerance by the country's religious authorities, unregistered churches have been facing increased pressure to either disband or join the system of state-controlled congregations." (J.A. 342). As noted, the BIA must "meaningfully consider[]" the petitioner's evidence, but it need not explicitly name and analyze every piece of that evidence. *Zhu*, 744 F.3d at 272. However, it is certainly an

abuse of discretion where, as here, the Board "fail[s] to discuss most of the evidentiary record." *Zheng*, 549 F.3d at 271.

We recognize that, even if a motion to reopen is timely filed, the BIA may deny the motion for various other reasons, including the movant's failure to establish a prima facie case for the relief sought. *See Shardar*, 503 F.3d at 313. In this case, however, the BIA's analysis of Li's eligibility for the relief sought suffers from the same infirmities as its analysis of the timeliness issue. Indeed, as the Government acknowledges, it is not even clear whether the BIA reached the question of whether Li had shown a prima facie case of eligibility for asylum. It did not do so explicitly, though it did comment that Li had not shown that "she will likely suffer mistreatment amounting to persecution." (J.A. 4.) Given the BIA's terse statements with regards to Li's eligibility for relief, it is not only impossible for us to review its conclusions—it is difficult to discern if it even made a conclusion.

Though we proceed cautiously in disturbing the BIA's discretionary ruling on a motion to reopen, we are nevertheless mindful of our appellate function. We must be able to review the reasoning supporting the BIA's factual and legal conclusions and determine if it supports the BIA's decision. The BIA's opinion here does not allow us to do that. Accordingly, we will vacate the BIA's decision denying Li's motion to reopen. However, in holding that the Board abused its discretion in failing to provide sufficient reasoning for its decision, we do not comment substantively on any of the issues in this case.

**IV.**

7

For the reasons set forth above, we will vacate the BIA's order and remand for further proceedings consistent with this decision.