**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 15-3851

———————

YAN PING LIN,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

————————————————————

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS
Immigration Judge: Annie S. Garcy
(Agency No. A077-353-997)

————————————————————

Submitted under Third Circuit LAR 34.1(a)
on October 27, 2016

Before:  FISHER,* VANASKIE, and KRAUSE, *Circuit Judges*

(Opinion filed: February 7, 2017)

———————

O P I N I O N**

———————

KRAUSE, *Circuit Judge*

* Honorable D. Michael Fisher, United States Circuit Judge for the Third Circuit, assumed senior status on February 1, 2017

** This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

_____

Yan Ping Lin, a native and citizen of the People's Republic of China, petitions for review of a decision by the Board of Immigration Appeals (BIA) denying her motion to reopen her removal proceedings. Because the BIA acted within its discretion in denying the motion, we will deny her petition.

## I.    Background

Lin was born in Fuzhou City, in the Fujian Province of China in 1980. She entered the United States in 2001 using a false Portuguese passport, and she was immediately charged as removable and referred to an Immigration Judge (IJ). Lin submitted an application for asylum, asserting a fear of persecution on account of her association with the Falun Gong religious group, but the IJ found her testimony at a January 9, 2002 hearing not credible and denied her request for relief. The BIA affirmed the IJ's decision and removal order on January 22, 2003.

Nevertheless, Lin remained in the United States and had two children. She also reports that she started attending church in February 2015 and became a Christian. On August 20, 2015, Lin filed a motion with the BIA to reopen her immigration proceedings and consider her application for asylum, withholding of removal, and protection under the Convention Against Torture based on a fear of persecution on account of her new religious faith and her violations of China's one-child family planning policy if she were removed to China. Lin acknowledged that her motion to reopen was time-barred under 8 C.F.R. § 1003.2(c)(2), which provides that a petitioner must file such a motion "no later

2

than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." However, she claimed that she qualified for an exception under 8 C.F.R. § 1003.2(c)(3)(ii), which allows for reopening after the 90-day window has elapsed if there is evidence of "changed circumstances arising in the country of nationality ... if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." *See also* 8 U.S.C. § 1229a(c)(7)(C)(ii).

She submitted over 2,000 pages of documents in support of her motion, including an asylum application, affidavits, birth and marriage certificates, photographs, excerpts of reports from U.S. government sources and non-governmental organizations, news articles, congressional testimony, and publications from Chinese websites and local government agencies. Nevertheless, on November 2, 2015, the BIA denied her motion. This timely petition for review followed.

## II. Discussion[1]

Lin argues that the BIA erred in failing to meaningfully consider the evidence she submitted regarding changed country conditions since the time of her 2002 hearing. Specifically, she argues that she submitted evidence sufficient to demonstrate that coercive sterilization as a means of enforcement of China's family planning policies has materially increased in her hometown, and that harassment of Christians attending house

---

[1] The BIA had authority to review Lin's motion under 8 C.F.R. § 1003.2(c), and we have jurisdiction over the petition for review pursuant to 8 U.S.C. § 1252(a).

churches in China has materially worsened. We conclude that the BIA adequately considered the evidence Lin presented and therefore did not abuse its discretion in denying the motion.[2]

### A. Standard of Review

The decision to grant or deny a motion to reopen is discretionary, and our review of such a decision is therefore "highly deferential." *Guo v. Ashcroft*, 386 F.3d 556, 561–62 (3d Cir. 2004). We will only disturb the BIA's decision as an abuse of discretion if it is "arbitrary, irrational, or contrary to law." *Id.* at 562. Similarly, we review the Board's findings of fact in support of such a decision under a "deferential substantial evidence standard." *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001). The BIA has "a duty to explicitly consider any country conditions evidence submitted by an applicant that materially bears on his claim." *Zheng v. Att'y Gen.*, 549 F.3d 260, 268 (3d Cir. 2008). The Board "must provide an indication that it considered such evidence, and if the evidence is rejected, an explanation as to why it was rejected." *Zhu v. Att'y Gen.*, 744 F.3d 268, 272 (3d Cir. 2014). At the same time, however, the Board is not required to "expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner," and it may consider proffered evidence "in summary fashion

_____

[2] The BIA concluded both that Lin failed to demonstrate materially changed country conditions and that she failed to establish her prima facie eligibility for the relief sought. The BIA may deny a motion to reopen on either of these bases. *I.N.S. v. Abudu*, 485 U.S. 94, 104 (1988). Because we affirm the BIA's decision on the basis of its conclusion as to changed country conditions, we need not address whether the BIA correctly concluded that Lin failed to carry her burden of making a prima facie showing of eligibility for relief.

4

without a reviewing court presuming that it has abused its discretion." *Zheng*, 549 F.3d at 268.

## B. Family Planning

Lin first argues that the BIA failed to adequately consider evidence of local population campaigns and erred in finding that there had been no meaningful change in enforcement of China's family planning policies since the time of her hearing. Contrary to Lin's arguments, the BIA adequately considered the evidence she offered and reasonably concluded that the evidence does not reflect a change in relevant country conditions sufficient to warrant reopening.

Lin argues that the Board failed to conduct an individualized review of her motion, as evidenced by its use of "boilerplate language" that it has also used in decisions denying relief in other cases. Appellant's Br. 16–18. In considering whether a BIA decision reflects meaningful consideration of the evidence presented, we look skeptically at the repetitive use of nearly identical language. *See Zhu*, 744 F.3d at 268 n.1. But while the opinion here includes language similar to that used in other cases,[3] we are satisfied that it reflects an adequate review. For example, the BIA notes that it compared "past and current conditions in China faced by parents of more than one child"; identifies

---

[3] For example, the BIA stated in its opinions underlying both *Zhu*, 744 F.3d at 277 and *Ni v. Holder*, 715 F.3d 620, 627 (7th Cir. 2013) that "social compensation fees, job loss or demotion, loss of promotion opportunity, expulsion from the party, destruction of property, and other administrative punishments are used to enforce [China's] family planning policy." This is nearly the exact phrasing used by the BIA in this case, except that it now adds the potential loss of "education opportunity." App. Vol. I, 4.

the State Department Reports from 1994, 1995, and 1998 as relevant to its assessment of past conditions at the time of Lin's hearing in 2002; and references a long list of documents that it credited as reflective of current conditions, including reports of the U.S. State Department and U.S. Congressional-Executive Commission on China (CECC), as well as reports that Lin submitted from the relevant Chinese family planning administration in her home province. App. Vol. I, 4–5. The Board's opinion acknowledges that these documents provide evidence of incentives to local officials to enforce family planning policies, the use of coercion to meet such birth targets, and incidents of forced sterilization and abortion, but it concludes that these practices "have been a longstanding concern" and are therefore not the product of a material change in conditions. App Vol. I, 4. In this respect, the Board's analysis was more thorough than that in *Zhu*, in which we criticized the Board for acknowledging the social and economic sanctions used to enforce population control measures while ignoring statements in the same CECC Reports regarding coerced abortions and sterilizations. *Zhu*, 744 F.3d at 277.

Moreover, substantial evidence supports the Board's finding that the evidence merely "indicates a continuation of the enforcement of the family planning policy in place since the time of [Lin's] removal proceedings in 2002," and that even those more recent documents not available at the time of Lin's hearing "announc[ing] renewed efforts to enforce the family planning policies" do not reflect a "significant" or "material" change in policy or practice. App. Vol. I, 4–5. Lin challenges this conclusion by

contrasting the 1998 State Department Report, released prior to her 2002 hearing and reflecting that Fujian Province was then reportedly known for "lax enforcement of family planning rules," Appellant's Br. 23 (quoting App. Vol. II, 2010), with recent reports of forced abortions and sterilizations in Fujian Province. That same 1998 State Department Report, however, noted that in Fujian Province, "[p]ressure for abortions and sterilizations [wa]s applied," and there had been "credible reports that several women were forced to undergo abortion in Fujian." App. Vol. II, 2014–15. This is consistent with the most recent State Department and CECC Reports that Lin submitted, which report that "the country's birth limitation policies *retained* harshly coercive elements" in 2013, and that officials "*continued* to use … coercive methods … to implement population planning policies" in 2014. App. Vol. II, 2147, 2188 (emphasis added). On this record, we have no basis to disturb the BIA's conclusion there has not been a "significant" or "material" change in those conditions since the time of Lin's hearing in 2002. App. Vol. I, 4.

## C.    Religious Belief

Likewise, the BIA sufficiently considered the evidence Lin presented in support of her argument that conditions have materially changed for Christians in China and did not abuse its discretion in denying the motion on that basis. Lin argued to the BIA that repression of Christianity in China has been exacerbated in recent years, in part because of government efforts to subdue churches before the 2008 Beijing Olympics, fears of a "jasmine revolution," and fears that the Chinese Christian population is growing. App.

7

Vol. II, 86–89.  The Board acknowledged the evidence that Lin submitted in support of this contention, including media reports, research articles, and congressional testimony, but it explained that it credited reports from the U.S. State Department as the most probative evidence of past and current country conditions and concluded that this mistreatment was a "longstanding concern."  App. Vol. I, 3.  We have previously held that such U.S. government reports are "the most appropriate and perhaps the best resource" for foreign country conditions, *Kayembe v. Ashcroft*, 334 F.3d 231, 235–37 (3d Cir. 2003) (citation omitted), and as such they may constitute substantial evidence to support the BIA's findings, *Zubeda v. Ashcroft*, 333 F.3d 463, 477–78 (3d Cir. 2003).  Moreover, those reports cited by the Board document that the Chinese government has continuously restricted and harassed unregistered religious groups.  Thus, while the evidence reflects troubling conditions of religious persecution, the BIA did not err in concluding that "the mistreatment of some church members by the Chinese government has been a longstanding concern," App. Vol. I, 3, and that Lin failed to meet her burden of demonstrating a material change since her removal hearing in 2002.  *See Liu v. Att'y Gen.*, 555 F.3d 145, 149 (3d Cir. 2009) (affirming the BIA's assessment that a continuation of poor conditions did not constitute a material change in conditions); *Jiang v. Holder*, 639 F.3d 751, 756 (7th Cir. 2011) (noting that China's persistent record of human rights abuses against Christians did not demonstrate sufficiently changed conditions).

**III.     Conclusion**

For the foregoing reasons, we will deny Lin's petition for review.