**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2625
_____

JOSE ANIBAL HERCULES HERCULES,
a/k/a Jose Hercules, a/k/a Jose Torres Hercules,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A094-986-020)
Immigration Judge: Jason L. Pope
_____

Submitted on a Motion for Summary Action
Pursuant to 3d Cir. LAR 27.4 and I.O.P. 10.6
March 25, 2021

Before: RESTREPO, MATEY and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: April 6, 2021)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Jose Anibal Hercules Hercules, a citizen of El Salvador who entered the United States in 2008, petitions pro se for review of the Board of Immigration Appeals' ("BIA") final order of removal. The Government has moved for summary disposition. For the reasons that follow, we grant that motion and will summarily deny the petition.[1]

I.

In 2019, the Department of Homeland Security charged Hercules with being removable for being present in the United States without having been admitted or paroled. Hercules, through counsel, conceded that charge and applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). At the merits hearing before the Immigration Judge ("IJ"), Hercules testified as follows.

When Hercules was in high school, members of the Mara Salvatrucha gang ("MS-13") recruited him to sell drugs for them. He declined their invitations; he did not want to work for the gang because he was "focused on Christian things." (A.R. at 135.) The gang members told him that "if [he] said anything [to anyone]," "they were going to try to take [his] life." (Id. at 134.) On another occasion, they beat him up until his nose bled, took his bicycle, and told him that "next time it will be different." (Id. at 135.)

---

[1] Although we have entertained the Government's motion, we remind the Government that such a motion should typically be filed before the petitioner's opening brief is due. See 3d Cir. LAR 27.4(b).

2

In 2004, around the time that Hercules graduated from high school, he witnessed MS-13 gang members murder a police officer. The gang members were aware that Hercules had witnessed the murder. When one or more of the gang members were arrested for that crime, other MS-13 members approached Hercules and asked him if he had gone to the police. Hercules told them, truthfully, that he had not done so.

Later, Hercules got a job at a gas station, at which point MS-13 members asked him to sell drugs there. When he refused, they told him that "something could happen to [him]" if he did not help them. (Id. at 143.) Hercules continued working at the gas station for the next three years, during which time the gang members threatened him three to four times per week. He then decided to flee El Salvador and come to the United States. After he arrived here, the gang members threatened his family members living in El Salvador (however, as the IJ noted, "it does not appear that the family has been physically harmed in any way," (id. at 60)), and "a young man" sent Hercules a text stating that he (Hercules) "knew what could happen to [him]," (id. at 145-46).

Hercules's counsel indicated at the merits hearing that Hercules was basing his claims for asylum and withholding of removal solely on a proposed particular social group ("PSG") consisting of "young [Salvadoran] males who refuse to join a gang because of their religious beliefs." (Id. at 125.)[2] At the end of the hearing, the IJ denied Hercules's

---

[2] To qualify for asylum or withholding of removal, an applicant must establish, inter alia, that the harm he fears in his home country would be on account of his race, religion, nationality, membership in a particular social group, or political opinion. See Zheng v. Att'y Gen., 549 F.3d 260, 266 (3d Cir. 2008).

claims for relief and ordered his removal to El Salvador. The IJ began by explaining that Hercules's asylum claim was untimely (his counsel had conceded this point during the hearing). Next, the IJ determined that Hercules's claim for withholding of removal failed because (1) the incidents in the past did not rise to the level of persecution, (2) his proposed PSG was not cognizable, and (3) "there is no indication that the gang members targeted [him] because of a specific religious belief that he may have held or any reason other than the gang members wanting him to engage in criminal activity." (Id. at 55.) Lastly, in denying CAT relief, the IJ explained that (1) Hercules had not shown that it is more likely than not that he would be tortured in El Salvador and (2) he (the IJ) could not find that it is more likely than not that the Salvadoran government would consent or acquiesce to efforts to torture Hercules.[3]

Hercules, through counsel, appealed the IJ's decision to the BIA. On July 22, 2020, the BIA adopted and affirmed the IJ's decision and dismissed the appeal. In doing so, the BIA noted that Hercules had conceded that his asylum claim was untimely. Regarding Hercules's withholding claim, the BIA agreed with the IJ that Hercules's proposed PSG was not cognizable, "inasmuch as he did not establish the group's social distinction." (Id.

---

[3] The IJ noted that two of the MS-13 leaders who had allegedly caused problems for Hercules had subsequently been imprisoned by the Salvadoran government, and that they were still in prison. The IJ also noted that, according to country reports for El Salvador that were prepared by the U.S. State Department, a court in that country had recently convicted 61 MS-13 members of various crimes, and a large number of gang members were currently incarcerated in Salvadoran prisons. The IJ predicted that the Salvadoran government "would pursue charges if [Hercules] would make them aware that he was being targeted by those gang members." (A.R. at 59.)

4

at 3.)[4]  Additionally, the BIA "f[ou]nd no clear error in the [IJ's] determination that [Hercules] did not establish that the gang members were targeting him based on his religious beliefs, as opposed to seeking to recruit him into their criminal organization." (Id. at 4.)  As for Hercules's CAT claim, the BIA "discern[ed] no clear error in the factual findings of the [IJ] with regard to the probability of torture," and the BIA agreed with the IJ that Hercules "has not demonstrated that the Salvadoran government would acquiesce to his torture by gang members." (Id.)

Hercules, proceeding pro se, timely petitioned for review of the agency's decision. After he filed his merits brief, the Government, in lieu of filing a response brief, moved to summarily deny the petition.[5]

## II.

As a general matter, we have jurisdiction to review a final order of removal.  See 8 U.S.C. § 1252(a)(1).  However, because the agency denied Hercules's asylum claim as time-barred, our jurisdiction here is limited to reviewing the agency's denial of his withholding and CAT claims.  See Issiaka v. Att'y Gen., 569 F.3d 135, 137-38 (3d Cir. 2009).  We review the agency's factual findings underlying its denial of these latter two

---

[4] To qualify as a PSG, a group must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." S.E.R.L. v. Att'y Gen., 894 F.3d 535, 547 (3d Cir. 2018) (quoting In re M-E-V-G-, 26 I. & N. Dec. 227, 237 (BIA 2014)).

[5] The Clerk has stayed the briefing schedule pending our disposition of the Government's motion for summary disposition.

5

claims for substantial evidence, see Tarrawally v. Ashcroft, 338 F.3d 180, 184 (3d Cir. 2003), and we may not disturb those findings "unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B). We review questions of law under a de novo standard, see Yusupov v. Att'y Gen., 518 F.3d 185, 197 (3d Cir. 2008), and we may take summary action if Hercules's petition fails to present a substantial question, see 3d Cir. I.O.P. 10.6.

Regarding the withholding claim, Hercules makes a barebones attack on the IJ's determination that the incidents in the past in El Salvador did not rise to the level of persecution, and Hercules baldly alleges that the IJ was wrong in concluding that he (Hercules) "do[es] not belong to a [PSG]." (Hercules's Br. 5; see id. at 4.) Assuming for the sake of argument that Hercules has done enough to preserve these arguments, see Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) (explaining that "a [brief's] passing reference to an issue . . . will not suffice to bring that issue before this court." (ellipses in original) (quoting Simmons v. City of Philadelphia, 947 F.2d 1042, 1066 (3d Cir. 1991))), neither argument warrants relief here. First, in upholding the IJ's denial of the withholding claim, the BIA did not rely on the IJ's past-persecution determination. Second, even if we were to assume for the sake of argument that Hercules's proposed PSG is cognizable, his withholding claim would still fail because the agency correctly concluded that he did not establish the requisite nexus between the harm that he fears and his membership in that PSG. See Gonzalez-Posadas v. Att'y Gen., 781 F.3d 677, 685 (3d Cir. 2015) ("[T]he applicant bears the burden of proving

6

that one central reason for the persecution was a protected characteristic."). Indeed, there is no evidence that MS-13 members did, or would, harm Hercules because of his religious beliefs or because he had a religious-based reason for refusing to help them.

As for Hercules's CAT claim, his brief merely asserts that the IJ "was wrong in deciding that . . . [he] do[es] not deserve relief under the [CAT]." (Hercules's Br. 5.) We agree with the Government that this bald argument was insufficient to preserve a challenge to the denial of his CAT claim. See Laborers' Int'l Union of N. Am., AFL-CIO, 26 F.3d at 398. But even if we were to conclude that Hercules *did* preserve this challenge, we would find it meritless because Hercules has not demonstrated that substantial evidence compels disturbing the agency's finding that it is not more likely than not that (1) he would be tortured in El Salvador, or (2) the Salvadoran government would acquiesce if the gang members attempted to torture him.

Because Hercules's petition does not raise a substantial question, we grant the Government's motion for summary disposition and will deny the petition. [6]

---

[6] To the extent that Hercules asserts that the BIA (1) did not address the facts or the law, and (2) dismissed his appeal without issuing an opinion, he appears to be referring to the BIA's June 5, 2020 order affirming, without an opinion, the IJ's denial of bond. But *that* BIA decision is not properly before us. See Bonhometre v. Gonzales, 414 F.3d 442, 446 & n.4 (3d Cir. 2005) (indicating that a habeas petition filed in federal district court is the means by which a non-citizen may challenge his immigration detention).